# Keenan, Appellant, *v.* Union Traction Company.

202    107
28 SC  377
202    107
214    478

*Negligence—Street railways—Look and listen—Collision between wagon and car—Contributory negligence.*

In an action against a street railway company to recover damages for personal injuries sustained in a collision between a car and a wagon which plaintiff was driving, it appeared that the collision occurred on a country road, upon which the tracks of the defendant's road were laid.  The east rail of the north track, upon which the car ran into the wagon, was ten feet from the open gateway of a residence.  The plaintiff testified that on the day of the accident he had delivered ice cream at the residence, and when leaving the property stopped his team, a one-horse wagon, inside the open gateway, and that the distance from his horse's head to the entrance was about fifteen feet; that his seat in the wagon was about ten feet from the horse's head; that the wagon was a closed one all the way to the front; and that he climbed out on the swingletree of the wagon far enough to get clear of the curtains and look down the road; that, after he had so looked, and there was no car in sight, he climbed back into his wagon, sat back on the seat between the curtained sides, took up the lines, walked his horse out of the premises with his view on each side cut off and did not see the car until he was in the center of the track and his wagon was struck.  At the point within the gate where the plaintiff stopped to look, a distance of about thirty-five feet from the track, he had an unobstructed view of 319 feet in the direction from which the car was coming, and there

was nothing to obstruct this view until the track was reached. *Held*, that a nonsuit was properly entered.

MESTREZAT, J., dissents.

Argued Jan. 21, 1902. Appeal, No. 149, Jan. T., 1901, by plaintiff, from order of C. P. No. 3, Phila. Co., June T., 1900, No. 948, refusing to take off nonsuit in case of Robert S. Keenan v. Union Traction Company. Before McCOLLUM, C. J., MITCH- ELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Af- firmed.

Trespass to recover damages for personal injuries. Before McCARTHY, J.

The opinion of the Supreme Court states the case.

*Edward W. Magill*, of *Alexander & Magill*, for appellant.— The case was for the jury: Muckinhaupt v. Erie R. R. Co., 196 Pa. 213; Elston v. Delaware, Lackawanna & Western R. R. Co., 196 Pa. 595; Conyngham v. Erie Electric Motor Co., 15 Pa. Superior Ct. 573; Shaughnessy v. Consolidated Traction Co., 17 Pa. Superior Ct. 588; Newton v. Pittsburg & Lake Erie R. R. Co., 18 Pa. Superior Ct. 18; Burke v. Traction Co., 198 Pa. 497; Newton v. R. R. Co., 18 Pa. Superior Ct. 18; Harman v. Penna. Traction Co., 200 Pa. 311; Ely v. Ry. Co., 158 Pa. 233; Woelfel v. Ry. Co., 183 Pa. 213; Hooper v. Traction Co., 17 Pa. Superior Ct. 638; Gress v. Ry. Co., 14 Pa. Superior Ct. 87.

*Thomas Leaming*, with him *Russell Duane*, for appellee.—It was contributory negligence not to look immediately before crossing the track: Burke v. Union Traction Co., 198 Pa. 497; Ehrisman v. East Harrisburg, etc., City Pass. Ry. Co., 150 Pa. 180; Cupps v. Consolidated Traction Co., 13 Pa. Superior Ct. 630; Brown v. Traction Co., 14 Pa. Superior Ct. 594.

OPINION BY MR. JUSTICE BROWN, March 24, 1902:

At the close of plaintiff's testimony the learned trial judge directed a verdict for the defendant. He could not have avoided doing so in the light of the clear contributory negligence of the appellant. The collision occurred in the country, on the Old York road, upon which the tracks of the appellee are laid.

The east rail of the north track, upon which the car ran into the team, is ten feet from the open gateway of the Hallowell property. The plaintiff testified that, on the day of the accident, he had delivered ice cream at Mr. Hallowell's residence, and, when leaving the property, stopped his team, a one-horse wagon, inside the open gateway, and that the distance from his horse's head to the entrance was about fifteen feet; that his seat in the wagon was about ten feet from the horse's head; that the wagon was a closed one all the way to the front; that he had climbed out on the swingletree of the wagon far enough to get clear of the curtains and look down the road ; that, after he had so looked, and there was no car in sight, he climbed back into his wagon, took up his lines, walked his horse out of the premises and did not see the car until he was in the center of the track and his wagon was struck. At the point within the gate where the plaintiff stopped to look—a distance of about thirty-five feet from the track—he had an unobstructed view of 319 feet in the direction from which the car was coming; and there was nothing to obstruct this view until the track was reached.

When the plaintiff stopped within the gateway, and got out on the swingletree to look for an approaching car, because he could not see from his seat in the closely curtained wagon, he exercised proper care ; but his misfortune is that he was careful but for an instant, when he should have continued to be watchful until the track, the real point of danger, was reached. If he had continued to look, he could have seen the car, just as those within it saw his team 100 feet in front of it, when the horse was on, or approaching the track. It is not conceivable, that the plaintiff could not have avoided the collision if he had continued to look. Instead of doing so, after he had first looked, and been careful before starting his horse toward the track, he climbed back into his seat, from which he could not see, and drove blindly on, so far as any view to the right or left of him was concerned. The care that he exercised when he got out on the swingletree and looked, counts for nothing, for, when he dropped back into his seat and started, with thirty-five feet intervening between him and the track, he might as well have been blindfolded in an open wagon, for all the opportunity he then had of looking out on either side. Had

he leaned forward beyond the curtains, without getting out on the swingletree, and looked, he could have seen the car; and his failure to do so was negligence per se : Wheelahan v. Philadelphia Traction Co., 150 Pa. 187.   From the time he started his team through the gateway, he had lapsed into carelessness, in the face of which all our authorities are conclusive against his right to recover.   He did not continue to look until he reached the track, and yet that was his duty: Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180 ; Burke v. Traction Co., 198 Pa. 497 ;  McCracken v. Consolidated Traction Co., 201 Pa. 378.

It is urged that the rule, that one about to cross a street railway track must continue to look until the track is reached, relates only to electric roads in cities, and does not apply to the crossing of such railway tracks in the country, where the views are much more extended, cars pass less frequently, and the obstructions to travel on town streets are not encountered. The answer to this is, that care must always be exercised.  The degree required may vary, but want of care under the circumstances is always negligence.   It is as much one's duty to look out for danger in the country as it is in the town.   Trolley cars run into wagons carelessly driven, not only on the streets of a city, but on turnpikes and rural roads as well.   We have never said that the duty of continuing to look until the trolley or street railway track is reached is not binding upon those driving teams in the country.   The same degree of watchfulness may not be required there as on crowded city streets, but it will never be held that there need be no care at all in the country, as there was not in this case after the plaintiff climbed back from the swingletree into his seat in the closed wagon, where he could not see, and started for the danger which he would have avoided, if he had looked.

Judgment affirmed.

Mr. Justice Mestrezat, dissenting:

On November 19, 1899, a rainy, gloomy day, Robert T. Keenan, the plaintiff, was driving a covered delivery wagon, drawn by one horse, out of a private lane or driveway which is at right angles with, and leads to, the Old York road in a rural

part of Montgomery county, on which the defendant company operates a double track street car line. The lane descends towards the road, and enters it ten feet from the east rail of the northbound railway track. There is a deep gutter at the side of the road in front of the gateway which is crossed by a bridge. For a distance of about 125 yards, Old York road has a descending grade from the south to the place of the accident. As the plaintiff was coming out of the lane, he stopped about the length of his team inside the gateway, the head of his horse being about twenty-five feet from the east rail of the street car track. He testifies that he then "stopped, looked and listened." He stepped out on the swingletree and looked south on the Old York road. He could see a distance of about 319 feet. He neither saw a car nor heard one approaching. He immediately resumed his seat in the wagon and without delay proceeded to walk his horse over the street car track. The horse cleared the track but the front wheel of the wagon was struck by a northbound car, separating the horse from the wagon and seriously injuring the plaintiff. After the collision, the car ran about 200 feet before it was stopped. When it was 100 feet south of the point of collision, a passenger standing on the front platform with the motorman, saw plaintiff's horse and wagon and they were then on the track in the act of crossing. The car was running at a rapid speed and the gong was not sounded until the car was about striking the wagon.

Upon these facts the trial court withdrew the case from the jury, holding as a matter of law that the plaintiff was guilty of negligence. It is contended that the plaintiff's failure to continue to look for an approaching car until he arrived at the track, was the cause of the collision resulting in his injuries. But that contention is not supported by the facts disclosed by the evidence. The plaintiff "stopped, looked and listened" at a proper place—when his horse was within twenty-five feet of the track—and where he could see an approaching car for a distance of over one hundred yards. No car was in sight and he had no reason to believe that one was approaching. Up to this point it must be conceded that the plaintiff had performed his whole duty. He then attempted to cross the track and in so doing permitted his horse to walk. What vigilance in looking for a car was required of him? Should he have alighted

from his wagon and led his horse over the track so that he might see an approaching car which the exercise of his senses told him would not interfere with his passing the track; or should he have resumed his seat in the wagon and walked his horse over the crossing, resting upon the assumption that the car would approach the crossing at the usual rate of speed and give a proper signal of its approach? He is certainly not required to adopt the former alternative, when the observance of a duty clearly imposed upon the defendant's employees would insure his safety in crossing the company's track. Had the plaintiff seen a car approaching or had reason to believe, after exercising his senses of sight and hearing, that a car was approaching, a different duty would have been imposed upon him. But even under such circumstances, this court has held that he may proceed to cross the track if after seeing the car he is justified in believing that it is at such a distance from him that he can cross in safety if the car runs at the usual speed. Here, however, the plaintiff having stopped and looked at a proper place saw no car. His team was only twenty-five feet from the track and no car was in sight or hearing. He could see at least 319 feet in the direction from which one must come, and the motorman when 426 feet from the crossing could see plaintiff's team approaching it. Under these circumstances, he was clearly justified in taking his seat in the wagon and in attempting to cross the track. At an ordinary or usual rate of speed the car could not have reached the crossing before he had passed it. That conclusively appears. Why then should he be compelled to alight from his wagon, lead his horse over the track, which might be difficult and might be accompanied with more or less danger, for the sole and only purpose of relieving the defendant company's employees from discharging their duties in approaching the crossing with care by running at a proper rate of speed and by giving the usual signals? The plaintiff and his wagon were on the crossing and in plain view of the motorman when his car was at least 100 feet distant from them. Had it been under proper control, as the law requires the motorman to have his car when approaching a crossing, it is evident that there would have been no collision with its consequent painful and permanent injuries to the plaintiff.

There is no allegation that the plaintiff did not stop and look at a proper place or that he failed to perform his duty to look so far as he could while seated in his wagon and approaching the crossing. He is condemned because after stopping at a proper place and looking for a car " he did not continue to look until he reached the track." This, as has been observed, involved his alighting from the vehicle twenty-five feet from the track and leading his horse, possibly skittish and unruly, over the crossing. This was not necessary for his safety, if the company's employees had done their duty in operating the car. He had time to walk his horse over the crossing in safety after he looked and saw no car, provided the defendant ran its car at an ordinary rate of speed. This is apparent from the rapid speed at which the car was running and the fact that the horse had cleared the track when the collision occurred. The plaintiff's only fault, therefore, lies in the fact that he did not anticipate the negligence of the defendant's employees in charge of the car and not attempt to cross the track at all. The law, however, does not impute negligence to the plaintiff for doing an act which can result in his injury only by reason of the failure of the defendant to do its duty. Unless the plaintiff is held to such a standard, there is no ground on which a failure of duty can be laid at his door.

It may be observed in conclusion that it was a question for the jury whether the plaintiff stopped at a proper place to look for the approaching car, and if he did, and saw none, whether he was justified in proceeding to cross the track in the manner and under the circumstances disclosed by the evidence. For the court below to determine this as a matter of law was to invade the exclusive province of the jury, recognized time and again by this court.

I would reverse the judgment and send the case to a jury.