## Timler, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Side collision—"Stop, look and listen"—Contributory negligence.*

When the driver of a team at the intersection of two city streets, fails to look immediately before going upon street railway tracks, he is guilty of contributory negligence.

In an action against a street railway company to recover damages for personal injuries, it appeared that plaintiff was injured while crossing in a wagon the tracks of a street railway at the intersection of two streets. Plaintiff looked twice and saw the car rapidly approaching. He first saw it a little more than 300 feet away. He drove on about ten feet and stopped, and then saw the car a little more than 200 feet distant. At the time he last looked it was necessary for him to travel thirty-two feet to clear the tracks. *Held,* that it was the duty of the driver to stop a third time before going on the track, and that in failing to do so he was guilty of contributory negligence, and could not recover.

MESTREZAT and POTTER, JJ., dissent.

Argued Jan. 22, 1906.   Appeal, No. 172, Jan. T., 1905, by plaintiff, from judgment of C. P. No. 5, Phila. Co., June T., 1903, No. 4,463, on verdict for defendant in case of Herman Timler v. Philadelphia Rapid Transit Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before DAVIS, J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Samuel E. Cavin*, with him *Frederick Beyer*, for appellant.— The learned judge erred in assuming that because between the two observations made by plaintiff it appeared that the car had traveled at a high rate of speed the plaintiff must necessarily take the risk that the car would continue such speed up to the crossing; the car at the time of the second observation being then 220 feet from the crossing, whilst the plaintiff's horse was but nine feet away from the track to be crossed: Hamilton v. Traction Co., 201 Pa. 351; Callahan v. Phila. Traction, 184 Pa. 425.

The learned judge erred in assuming that plaintiff did not look for the approaching car when he was about to cross the track, in face of the testimony that he looked when he was but nine feet away: Moser v. Traction Company, 205 Pa. 481.

The learned judge erred in giving binding instructions to the jury in favor of a verdict for defendant: Beach v. Pennsylvania R. R. Co., 212 Pa. 567.

*Thomas Leaming*, with him *Russell Duane*, for appellee.— Plaintiff was guilty of contributory negligence in not looking for the car at the edge of the track: Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Darwood v. Union Traction Co., 189 Pa. 592; Kern v. Second Avenue Traction Co., 194 Pa. 75; Burke v. Union Traction Co., 198 Pa. 497; Pieper v. Union Traction Co., 202 Pa. 100; Keenan v. Union Traction Co., 202 Pa. 107; Moser v. Union Traction Co., 205 Pa. 481; Boring v. Union Traction Co., 211 Pa. 594; Brown v. Traction Co., 14 Pa. Superior Ct. 594.

Plaintiff was guilty of contributory negligence in attempting to cross the track after two observations had disclosed the car rapidly approaching and gaining speed: Mease v. United Traction Co., 208 Pa. 434; Smith v. Electric Traction Co., 187 Pa. 110; Greenwood v. P. W. & B. R. R. Co., 124 Pa. 572.

The decisions of the Supreme Court, in their chronological order, as to crossing collisions between wagons and street cars,

are as follows:—Thomas v. Citizens' Pass. Ry. Co., 132 Pa. 504; Carson v. Federal Street, etc., Ry. Co., 147 Pa. 219; Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Wheelahan v. Traction Co., 150 Pa. 187; Winter v. Ry. Co., 153 Pa. 26; Gilmore v. Ry. Co., 153 Pa. 31; Downey v. Pittsburg, etc., Traction Co., 161 Pa. 131; Omslaer v. Traction Co., 168 Pa. 519; Callahan v. Traction Co., 184 Pa. 425; Smith v. Electric Traction Co., 187 Pa. 110; Darwood v. Union Traction Co., 189 Pa. 592; Kern v. Second Ave. Traction Co., 194 Pa. 75; Boehmer v. Traction Co., 194 Pa. 313; Bomscheuer v. Consolidated Traction Co., 198 Pa. 332; Burke v. Union Traction Co., 198 Pa. 497; Tyson v. Union Traction Co., 199 Pa. 264; Harman v. Penna. Traction Co., 200 Pa. 311; Hamilton v. Consolidated Traction Co., 201 Pa. 351; Pieper v. Union Traction Co., 202 Pa. 100; Keenan v. Union Traction Co., 202 Pa. 107; March v. Union Traction Co., 209 Pa. 46; Moser v. Union Traction Co., 205 Pa. 481; Mease v. United Traction Co., 208 Pa. 434.

OPINION BY MR. JUSTICE ELKIN, March 19, 1906:

The undisputed evidence is that when appellant looked the second and last time the head of his horse was nine feet from the track, while he himself was seated on his wagon nearly twenty feet distant. When he last looked and saw the approaching car it was necessary, in order to cross in safety, that he should drive nine feet to the track, five feet across it; which added to the length of his horse and wagon, eighteen feet, made a total of thirty-two feet before he could pass the car in safety. Notwithstanding these facts, he disregarded his duty to look immediately before going upon the track, and was injured by the collision with the car. Under the settled rule of our cases he was guilty of contributory negligence, and there can be no recovery. This court has frequently said that when the driver of a team at the intersection of two city streets, fails to look immediately before going upon the track, he is guilty of contributory negligence: Ehrisman v. Passenger Railway Co., 150 Pa. 180; Darwood v. Union Traction Co., 189 Pa. 592; Kern v. Second Avenue Traction Co., 194 Pa. 75; Burke v. Union Traction Company, 198 Pa. 497; Pieper v. Union Traction Company, 202 Pa. 100; Keenan v. Union Traction Company,

202 Pa. 107; Moser v. Union Traction Company, 205 Pa. 481; Boring v. Union Traction Company, 211 Pa. 594.

The case at bar cannot be distinguished from the cases cited. Indeed, the facts in many of the cited cases more strongly favored the plaintiff than do those of the present case. The appellant looked twice and saw the car rapidly approaching. He first saw it a little more than 300 feet away. He drove on about ten feet and saw the car a little more than 200 feet distant. In other words, while he drove ten feet the car moved about 100 feet. At the time he last looked it was necessary for him to travel thirty-two feet to clear the tracks, while the car would have to move about 200 feet before reaching him. It is clear, therefore, that if he drove at the same rate of speed and the car continued to move at the same rate, a collision must result. Notwithstanding these facts he continued on without again looking for the car which he knew was rapidly approaching. If he had looked immediately before going upon the track, as the rule of our cases requires, he would have seen the car less than 100 feet away, and should have known that he could not cross in safety if he continued driving at the same rate of speed. The evidence shows that he took no precaution for his safety after he looked the second time. The rule of law which requires him to look immediately before going on the track is not complied with if when he looks and sees danger he makes no effort to avoid it. Even if it be conceded that the car was running at an unusual rate of speed, appellant was not thereby excused from the performance of duties imposed on him by law. If he had observed his duty to look immediately before going on the track, the question of defendant's negligence in running the car at an excessive rate of speed might have been properly submitted to the jury. He did not do so, and the case turns not on the defendant's negligence, but on the contributory negligence of plaintiff. Indeed, the greater the danger from the rapidly approaching car, the more imperative his duty to look immediately before going on the track. It was not only his duty to look at the proper place, but when he looked and saw danger which could be avoided by the exercise of reasonable care, it was his duty to avoid that danger. We have frequently said that it is as much the duty of the driver of a team to avoid a colli-

sion in these cases as it is of the motorman of a car. The learned court below gave binding instructions for defendant, and in this we see no error.

Judgment affirmed.

MR. JUSTICE MESTREZAT, dissenting:

The learned trial judge held that the plaintiff was guilty of contributory negligence and on that ground directed a compulsory nonsuit. The plaintiff and another witness were called in his behalf. It was admitted, however, on the record that fourteen other witnesses would corroborate the evidence given by the two witnesses who testified.

The facts are not in dispute. About 8 o'clock on the evening of July 11, 1903, Timler, the plaintiff, drove a one horse bottling wagon east along the south side of Clearfield street, which runs almost east and west. This street opens into Kensington avenue on which the defendant company operates a double track electric car line. When Timler got to the house line on the west side of Kensington avenue he looked south and saw no car. He then drove on and, as was his custom, looked at the window in a barber shop on the opposite side of Kensington avenue and saw no reflection of an approaching car. When he got even with the curb on the west side of Kensington avenue he looked again and saw a car coming from the south at a distance of 333 feet. Timler then says he knew he had plenty of time to cross in safety. He drove on, and when his horse's head was over the west rail of the first track and nine feet from the second or north bound track he looked again and saw the car coming at a distance from him about 220 feet. He then struck his horse with the line and started to cross the north bound track, but before he had passed entirely over it the rear right wheel of his wagon was struck on its hub and the tire was struck on the rear part of the wheel. The wagon was thrown to the left and Timler to the right side.

The car approached the crossing at a speed of at least twenty miles an hour, double its ordinary speed at that place. Its speed was accelerated as it approached the crossing and ran more than 100 feet after the collision before it was stopped.

I do not agree with the majority of the court that the facts, which are undisputed and are stated above, are sufficient to

convict·the plaintiff of negligence as a matter of law.. I fail to see wherein .they. disclose any negligence on the part of the plaintiff. He approached Kensington avenue with the greatest care. Before he had passed the house line and entered the avenue he looked to see if a car was approaching. None was in sight. As he proceeded he observed ·the same care, and looked at the barber shop window .where he could see the reflection of a car if any were approaching. Again he saw none. He proceeded towards the crossing and when in line with the curb on Kensington avenue, still keeping a lookout, he saw for the first time a car approaching from the south. It was 333 feet distant. He testified that he then thought he had plenty of time .to cross in safety. He continued to observe the car as it approached the crossing until his horse's head ·was over the first·rail of the westernmost track of the car line. . His· action subsequent to that time is, in·the judgment of the trial court and of a majority of this.court, what convicts him of negligence. Prior to this time it is not claimed by anyone that he failed to observe the care required of him, but the attempt to cross the north bound track under the circumstances is, in the opinion of the majority of the court, sufficient to convict him of negligence. The majority opinion in effect holds that the plaintiff was negligent because it does not affirmatively appear that in proceeding·across the second track, he did not keep his eyes on the car instead of on his horse and in front of him. That view, however, overlooks the uncontroverted facts in the case, and the plaintiff's rights and duties thereunder. It was Saturday evening, and a great many people were on and about the crossing. When the plaintiff saw the car at a distance of 220 feet or more, he was committed to crossing the· first·track. . He was not driving in front of an approaching car where a· collision was imminent, nor, in his opinion, at all probable. On the contrary, under the evidence, the jury .would have been clearly justified in finding that if the car had run at its ordinary speed he could have crossed the north bound track in safety. The undisputed fact is ·that the car approached the crossing at twice its ordinary rate of speed; and, further; that it struck the ·rear of the plaintiff's·wagon just·as it was leaving the north bound track.· It·is, therefore, clear and beyond all doubt· that the plaintiff was unquestionably justified in believing that when he attempted to

cross the defendant's second track he could do so with safety. The jury would have been compelled to have so found had the question been submitted to them. The plaintiff had the right, in determining whether he could cross in safety, to assume that the defendant's car would not run at a grossly negligent rate of speed, but would travel at its usual rate. This court so held in Callahan v. Traction Co., 184 Pa. 425, where Mr. Justice FELL, delivering the unanimous judgment of this court, said : " The sum of the appellant's contention is that as the plaintiff saw the car and attempted to cross Thirteenth street ahead of it, he took the chance of being able to do so, and cannot recover. The chance which the plaintiff took was that of crossing the street in safety in advance of a car which approached at the usual rate of speed. It was not the chance of being run down by a car propelled at an unusually high rate of speed of which he had no notice, and which was not checked as the car approached the crossing. A person about to cross a street at a regular crossing is not bound to wait because a car is in sight. If a car is at such a distance from him that he has ample time to cross if it is run at the usual speed, it cannot be said as a matter of law that he is negligent in going on." Applying the rule there announced with the unanimous consent of this court, the plaintiff was amply justified on the undisputed facts in believing that he could cross the defendant's second track in perfect safety and hence his attempt to do so cannot as a matter of law convict him of negligence.

It certainly would not have been prudent for the plaintiff to have stopped on the south bound track. This would have endangered himself and his team. At any moment a car might have approached from the north, and had it been running at the excessive and negligent rate of speed at which it is conceded the north bound car was traveling, there would have been a collision, possibly resulting in the plaintiff's death. Before passing the house line and until he was committed to crossing the south bound track, a place of danger, the evidence establishes, and it is conceded, that he kept a constant lookout for an approaching car. He was then justified in proceeding to cross the second track, as held in the recent case of Haas v. Chester Street Railway Co., 202 Pa. 145, where this court says (p. 147) : " If the act of looking, commenced at a point back

of the house line, continues when it is reached and until the driver is so far committed to the act of crossing that it is more dangerous to attempt to stop than to go on, he has done all the law requires in that regard." For this court to lay down the proposition that with an approaching car at least 220 feet distant from the crossing the plaintiff was as a matter of law guilty of negligence in not stopping on the first track and in attempting to cross the second track nine feet distant is a step beyond anything which this court has heretofore taken and, as we have seen, in conflict with its own decision. The effect of such a ruling is still to further deprive the public of the use of the streets of a city and turn them over to the unlimited and unrestrained use of the companies operating the electric car systems. While a street car has a right to the use of the street superior to that of the traveler, yet the latter is still entitled to use the street, and that right must be recognized by the street car. Both the street car and the traveler have rights at a crossing, and it is the duty of the company's employees in charge of the car to approach a crossing with the car under such control that the safety of the traveler, exercising proper care, will not be endangered. It is conceded here, or at least must be, that the motorman in charge of this car was guilty of the grossest negligence. From the time the car was at least 333 feet from the crossing and until the collision, the plaintiff, as he approached the crossing, was in plain view of the motorman. It was the duty of the motorman to put his car under control so that he could have prevented the collision if the plaintiff was on the track. Instead of observing this duty, clearly imposed upon him by all our cases, he continued to accelerate the very high rate of speed at which his car was traveling, until the collision occurred. This grossly negligent act of the motorman was the proximate cause of the collision, and was the only reason why the plaintiff was unable to pass the crossing before the car reached it.

This is not a case where the traveler fails to exercise care by not looking as he approaches the track and is struck by a car which he does not see but could have seen. It distinctly belongs to that class of cases where the traveler, exercising the care required of him by constantly looking for an approaching car, and seeing it, has just reason to believe on the assumption

the car will run at its ordinary speed, that he can pass the track in safety.   I know of no decision which declares him to be at fault when, under such circumstances, he is injured in a collision with an electric street car propelled at a grossly negligent rate of speed.

Believing that the judgment of the trial court is not supported by reason nor by precedent in this or any other jurisdiction I would reverse it and send the case to a jury.

MR. JUSTICE POTTER, dissenting :

Under the facts of this case, I cannot agree that the trial judge was justified in holding as matter of law that the plaintiff was guilty of contributory negligence.   The testimony does not show just how far away the car was when his horse entered upon the tracks.   But there is positive evidence that when the horse was only nine feet from the track, the car was 220 feet distant.   Three steps of the horse would cover the nine feet, and even if the car had been approaching at a speed three times that of the horse, it would have been nearly 200 feet distant when the horse first came upon the track and thus gave to the motorman unmistakable warning that the line ahead of him was not clear, and that he must have his car under full control, and approach with caution.   It seems to me that contributory negligence upon the part of the driver can only properly be held as a matter of law, when he drives in front of an approaching car, which is so near to him that the motorman cannot reasonably be expected to stop his car in time to prevent the collision.   It would seem that a reasonable test to be applied in such a case, would be to inquire what was the distance to the car when the horse entered upon the line of the track.   If it was not more than a car length away, or was within some such immediate proximity, not a sufficient distance to enable the motorman to stop in time, then, as a matter of law, the driver may justly and properly be held guilty of contributory negligence.   But when there is a space between the approaching car and the line of crossing, ample under ordinary circumstances to permit of safe passage ; or where the space is sufficient for the motorman to stop his car, it being under proper control, and thus avoid collision ; if, under either of these conditions, a collision occurs during an attempted

crossing, the questions of negligence and contributory negligence may very properly be left to the determination of the jury. The duty of exercising care in the use of the streets, and particularly at intersections, is clearly incumbent upon both parties. The motorman has no right to drive his car straight ahead at a street crossing without any slackening of speed, and without any regard to the safety of vehicles that may be lawfully crossing at right angles, the line of his track. It is his duty at such places to have his car under control, so that he may slow down or even stop, if necessary. The distance at which a driver may prudently attempt to cross in front of a car has never, perhaps, been accurately fixed; but it has, I think, generally been regarded as prudent to cross, if the car is at the time far enough away to permit the motorman, if necessary, to bring it to a full stop before reaching the line of intersection. The evidence in a host of cases before this court, has shown that ordinarily a car under proper control can be stopped within its own length, or, say, within a distance of thirty feet. Surely, then, a space of twice or three times that much may be considered as affording a liberal margin of safety, within which to cross the track ahead of the car.

The testimony in the present case shows that when the driver started his horse across the track, the car must have been at least 100 feet away, and possibly considerably more. I cannot agree that it should be deemed negligence per se, for a driver to start to cross the track of a street railway, at the intersection of two city streets, when at the moment he starts to cross the line, there is no approaching car within a distance of 100 feet.

There is also testimony in this case that would have justified the jury in finding that the car was running at a very high rate of speed, and that this unusual rate of speed brought the car upon the plaintiff very much sooner than would have been the case had it been running at the ordinary rate. Even as it was, the plaintiff had almost cleared the track when he was struck. The inference in this regard might fairly be, that the plaintiff had a reasonable right, in making his calculations for the crossing, to presume that the car would not approach the point of intersection at a speed greater than usual.

I would reverse this judgment and submit the questions of negligence and contributory negligence to the jury.