# Mackey, Appellant, *v.* Philadelphia & West Chester Traction Company.

*Negligence—Street railways—Right angle collision—Contributory negligence—Private driveway—Four horse team—Heavy wagon.*

1. In an action for damages for death resulting from a right angle collision between an electric railway car and a team, where the conditions at the place of crossing were such that the motorman saw or ought to have seen the team in the act of crossing, at a distance far enough ahead of him to have stopped his car and avoided the collision, if his car had been under control, the failure of the motorman to control his car calls for explanation, and the question as to whether he was negligent is for the jury; and in determining the question it is proper for them to take into consideration whatever special or accidental feature of the time or place, that might excuse the motorman.

2. In a suit to recover damages for death where it appears that the decedent drove a four horse team attached to a heavy oil wagon out of a private lane onto a public highway situated on a hill and was struck by a trolley car while crossing the second track of a double track street railway located on the highway, the questions of negligence and contributory negligence are for the jury where the testimony is to the effect that the driver stopped the team not more than eight feet from the first rail of the first track; that both he and his companion looked both ways and agreed that no car was in sight; and that in the direction up hill from which the car came that struck them they had a clear view of 560 feet to the top of the hill, and that they were also in clear view of the motorman from that point.

3. The question of contributory negligence upon the part of the driver of a team, in such a case as the above, can only properly be

determined by the judge as a matter of law, when the evidence is clear and undisputed, that in attempting to cross the tracks, he drove in front of an approaching car, when it was so near to him that the motorman could not reasonably be expected to stop his car in time to prevent the collision. But when there is testimony, that with a long and unobstructed view of the tracks, no car was to be seen when the driver reached the edge of the line of the tracks, and that the space between the point where a possible approaching car would appear and the line of the crossing was such as would seem ample under ordinary circumstances to permit of a safe passage, the question of negligence and contributory negligence should be left to the jury.

4. In an action against a street railway company to recover damages for death resulting from a right angle collision between a car and a team, the absence of a burning headlight, or a failure to sound a gong or ring a bell are not material evidence of negligence on the part of the company, where it does not appear that the absence of such warnings caused or contributed to the accident.

Argued Feb. 7, 1910.  Appeal, No. 195, Jan. T., 1909, by plaintiff, from judgment of C. P. Delaware Co., March T., 1908, No. 84, refusing to take off nonsuit in case of Anna B. Mackey v. The Philadelphia & West Chester Traction Co. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ.  Reversed.

Trespass for damages for death.  Before BROOMALL, J.
The facts appear in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*W. Roger Fronefield,* for appellant.—The jury may infer negligence from the fact, that a car has run into a wagon at a grade crossing, after the motorman saw, or in the exercise of due care should have seen, a wagon on the track 560 feet away, when the car should have been stopped in 200 feet: Pittsburg, etc., Ry. Co. v. Dunn, 56 Pa. 280; Citizens Passenger Ry. Co. v. Foxley, 107 Pa. 537; Johnson v. Railway, 160 Pa. 647; Evers v. Phila. Trac. Co., 176 Pa. 376; Lenkner v. Citizens Traction Co., 179 Pa. 486; Jones v. Traction Co., 201 Pa. 344; Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Hanlon v. Traction Co., 28 Pa. Superior Ct. 223; Vincent v. Lehigh Valley Transit Co., 220 Pa. 350.

*William I. Schaffer*, for appellee.—On the proofs the decedent was guilty of contributory negligence: Keenan v. Union Traction Co., 202 Pa. 107; Smathers v. Pittsburg & Butler Street Ry. Co., 226 Pa. 212; McCracken v. Consolidated Trac. Co., 201 Pa. 378; Timler v. Phila. Rapid Transit Co., 214 Pa. 475; Moser v. Union Traction Co., 205 Pa. 481; Houston v. Consolidated Traction Co., 28 Pa. Superior Ct. 374.

The driver of a team must look before he comes to the track on which the car is running: Ehrisman v. Harrisburg Pass. Ry. Co., 150 Pa. 180; Wheelahan v. Phila. Traction Co., 150 Pa. 187; Darwood v. Union Traction Co., 189 Pa. 592; Pieper v. Union Traction Co., 202 Pa. 100; McCracken v. Consolidated Traction Co., 201 Pa. 378; Kennan v. Union Traction Co., 202 Pa. 107; Burke v. Union Traction Co., 198 Pa. 497; Timler v. Phila. Rapid Transit Co., 214 Pa. 475.

OPINION BY MR. JUSTICE POTTER, March 21, 1910:

The plaintiff brought this action to recover damages for the death of her husband, which resulted from an accident alleged to have been caused by the negligence of an employee of the defendant company. The court below entered judgment of compulsory nonsuit, and refused to take it off. The question is, was there at the trial any evidence of negligence which ought to have been left to the jury. The facts of the case are simple. The defendant company has a double track electric railway laid upon the Philadelphia and West Chester turnpike. On February 13, 1908, about four o'clock in the afternoon of a foggy day, James S. Mackey, husband of the plaintiff, accompanied by L. R. Dennis, drove a four-horse team attached to a heavy oil wagon, out of a private driveway on the south side of the highway, up nearly to the line of the tracks. At that point the tracks run east and west, and are located on the southerly side of the road. The team was stopped when the noses of the leading horses were not more than eight feet from the first rail of the first track. One witness puts the distance at about three feet. While the team was standing, the men looked both ways and compared notes and agreed that no car was in sight, and that it would be safe

to proceed. The line of the railway came down grade to the point where they were standing, from the east, and continued to descend for some distance further. The fog lay in the valley, but towards the top of the hill,—the direction from which the car that struck them came—the view was clear and the tracks were in plain sight for a distance of 560 feet. Any car approaching from the east, and within that distance, could be seen. If the testimony for the plaintiff is to be credited, there was no car coming from the east in sight, or within a distance of 560 feet from the place where the team was standing, when the men looked up the tracks in that direction. The team was then started forward upon a walk, as the witness Dennis testified, after they saw that there was no danger; the leading horses passed across the first track and the space between the two tracks, and cleared the second track; but while the wheel horses were yet upon the second track they were struck with great force by an approaching westbound car that came down the hill. The wheel horses were torn from the wagon and killed; Mackey, the driver, was killed, and Dennis was thrown from the wagon and severely injured. The car ran some 200 feet or more beyond the place of the accident before it could be stopped. The witness who testified to the fact of stopping the team and looking for an approaching car was injured in the collision; and had no recollection of the precise circumstances of the collision itself. He said he did not see the car which struck them. As the driver of the team, Mr. Mackey, was killed, his evidence was not to be had. But in addition to the positive evidence of the care which he exercised, not only in looking for an approaching car as he came to the edge of the first track, but in stopping his team and listening as well, it may be presumed in the absence of any testimony to the contrary that he also continued to look for an approaching car, until his leading horses were entering upon the line of the second track. Whether he was negligent or not, in entering upon this track when he did, would be a question of fact for the jury. If the car was then in sight, and too close to justify him in proceeding, that was a matter for the defense to show.

If it be true that no car was in sight when the driver started his team across the tracks then it necessarily follows that when the approaching car from the east reached a point where the team and wagon could be seen by the motorman, the team must have been in the act of crossing. As the car came over the brow of the hill, and when it was yet some 560 feet distant from the crossing and the team, the motorman must have had warning that the track in front of him was not clear; it was then incumbent upon him to get his car under good control and approach the crossing with caution, prepared to stop, if necessary. That he did not under these circumstances have his car under such control as would enable him to stop within a distance of 560 feet is a fact from which negligence upon the part of the motorman might very reasonably be inferred by the jury. Common experience and observation show that, under all ordinary circumstances, such a distance is at least four or five times as much as is required for the stopping of an electric car. The failure of the motorman to control his car within so great a distance certainly called for explanation, and if it was owing to some special or accidental feature of the time and place, which would relieve the motorman from the charge of apparent negligence, such evidence would be for the proper consideration of the jury. The fact that the motorman was running down grade at the time would only emphasize the need for keeping his car under such control as to enable him to have due regard for the safety of others who might be lawfully using the highway, or crossing the tracks at right angles.

The principal matter in which negligence is charged against the defendant company in plaintiff's statement of claim, is in running the car at an undue rate of speed, and without having it under proper control, so that it could be brought to a stop within a reasonable distance, when the motorman saw, or in the exercise of due care should have seen, that a team was crossing the track at a considerable distance ahead of him. It was for the jury to say whether and how far the evidence as to this point was to be believed, and whether or not an inference of negligence in this respect upon the part of the

motorman was to be drawn.  There were other minor matters of alleged negligence, which under the evidence were not very material, such as the failure to show a burning headlight.  It was not shown that the fog had anything to do with the accident, or that the headlight if lighted would have been of any use.  The daylight was sufficient to permit a clear view to the top of the hill, from whence the car came.  So with regard to the allegation of a failure to sound a gong or ring a bell.  No necessity for any such warning appeared except as it affected the ability to control the car; so long as the car was under good control, and could be stopped within a reasonable distance in case of need, as at a crossing, or to avoid injury to others lawfully using the highway, the question of speed was not material.  The motorman would have no right to run deliberately into a team or vehicle upon the track in front of him, no matter how slowly he might be approaching.  The essential requirement is that the movement of the car be kept under due control, so as to avoid a collision if possible.

As to the question of contributory negligence upon the part of the driver of the team, in such a case as this, that can only properly be so pronounced by the judge as a matter of law, when the evidence is clear and undisputed, that in attempting to cross the tracks, he has driven in front of an approaching car, when it was so near to him that the motorman could not reasonably be expected to stop his car in time to prevent the collision.  But when there is testimony as in this case, that with a long and unobstructed view of the tracks, no car was to be seen when the driver reached the edge of the line, and that the space between the point where a possible approaching car would appear and the line of the crossing was such as would seem ample under ordinary circumstances to permit of safe passage; when, notwithstanding such an alleged situation, during an attempted crossing of the tracks, a collision occurs, it seems to us that the questions of negligence and contributory negligence should properly be left to the determination of the jury.

We are of opinion that under the evidence, this case as presented was not one for the court to determine as matter of

law, but that with proper instructions, it should have been submitted to the jury.

The judgment is reversed with a procedendo.