# Clift *v.* Philadelphia & West Chester Traction Company, Appellant.

*Negligence—Street railways—" Stop, look and listen"—Crossing tracks —Contributory negligence.*

1. When the driver of a team about to cross the tracks of a passenger railway constructed upon a public highway, fails to look immediately before going upon the track, he is guilty of contributory negligence.

2. Where a person driving a buggy at night on a public highway on which an electric railway is operated, knows that a car is approaching from behind from the reflection of its light on the rails, and turns his horse's head at a point opposite the entrance to a lane across the track, and at a distance of twelve feet from the nearest track, stops, looks and listens, and then settles back in his seat, and without further looking drives across the track at a slow walk, he is guilty of contributory negligence, and cannot recover from the company for personal injuries which he sustained by a collision between the car and his buggy.

Argued Nov. 19, 1912. Appeal, No. 25, Oct. T., 1912, by defendant, from judgment of C. P. Chester Co., April

Term, 1911, No. 26, on verdict for plaintiff in case of John Clift v. Philadelphia & West Chester Traction Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Trespass to recover damages for personal injuries.  Before BUTLER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $600.  Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant, and motion for judgment n. o. v.

*A. M. Holding,* for appellant.—Plaintiff was bound to look immediately before driving his horse upon the track: McCartney v. Traction Co., 27 Pa. Superior Ct. 222; Potter v. Ry. Co., 19 Pa. Superior Ct. 444; McCracken v. Traction Co., 201 Pa. 378; Bobb v. Traction Co., 206 Pa. 265; Timler v. Transit Co., 214 Pa. 475; Keenan v. Traction Co., 202 Pa. 107; McPhillips v. Traction Co., 19 Pa. Superior Ct. 223; Tyson v. Traction Co., 199 Pa. 264; Brown v. Traction Co., 14 Pa. Superior Ct. 594; Tozer v. Elec. Railway Co., 45 Pa. Superior Ct. 417.

*J. Frank E. Hause,* for appellee.—The case was for the jury: Hamilton v. Traction Co., 201 Pa. 351; Wright v. Pittsburg Railways Co., 223 Pa. 264; Smathers v. Railway Co., 226 Pa. 212; Mackey v. Traction Co., 227 Pa. 482; Bush v. Ry. Co., 232 Pa. 327; Haas v. Railway Co., 49 Pa. Superior Ct. 106; Sheetz v. Traction Co., 49 Pa. Superior Ct. 177.

OPINION BY PORTER, J., February 27, 1913:

The plaintiff brought this action to recover damages for injuries alleged to have been sustained from a collision between the buggy in which he was riding and a car of the defendant company.  Upon the trial in the court

below the defendant presented a request for binding instructions which the court refused. There was a verdict in favor of the plaintiff, whereupon the defendant moved the court for judgment non obstante veredicto, which motion the court overruled, and judgment was entered upon the verdict. The defendant appeals.

The appellant operates, at the point where the collision occurred, a single line electric passenger railway, constructed upon the south side of the public road known as the Philadelphia & Newtown Square Road. The plaintiff testified that on the night of January 25, 1911, he was driving along the northern side of this public highway from the borough of West Chester easterly in the direction of his home. When he had arrived at a point about fifty yards west of the point where he would have to cross the track of the defendant company and drive into the lane leading to his residence he saw upon the rails of the track the reflection of the light from the headlight of a car approaching from behind and continued to observe the reflection of that light while he slowly drove to a point opposite to the mouth of his lane. The lane leading to plaintiff's residence entered the public highway from the south side, and in order to reach it plaintiff must drive across the defendant's track. Plaintiff having arrived at that point, turned his horse's head slightly to the south, stopped, looked and listened for the car, which he had for some time known was coming behind him. He then heard the car coming and saw the rays of light from the headlight reflected from the rails of the track at the crossing. The head of his horse was at that time twelve feet from the nearest rail of the track, and the rear of the buggy in which he was seated was sixteen feet and a half back of the head of the horse. He testified that he rose from the seat of the buggy and leaning forward looked out past the side of the buggy top and saw light from the car reflected from the side of the Crossley House, a yellow building which was 825 feet west of the center of the crossing. He testified that he could not tell whether the light

which he saw thus reflected from the house came from the headlight or from the windows of the car. He testified distinctly that he could not tell whether the car had then passed the Crossley House or was still west of it. The sum of his testimony as to the location of the car was that he assumed the car was in the neighborhood of the Crossley House because he saw light reflected from that house. He testified distinctly that he did not see the car and did not know just where it was. This seems almost inexplicable for the reason that the testimony of the plaintiff, of every witness called by him and of every witness for the defendant, clearly indicated that the car carried a very brilliant headlight, and, according to the testimony of an engineer called as a witness by the plaintiff, which testimony was uncontradicted, there was an unobstructed view of the track for the distance of 2,300 feet looking westward from the crossing. A witness called by the plaintiff testified that he was a passenger on the car and that when the car was about 290 feet from the crossing, he saw the plaintiff's team just about the time the head of the horse was turned round to go into the lane, when it was about twelve feet from the track, which was exactly the position to which the plaintiff testified when he stopped to look. The failure of the plaintiff to see the approaching car would only seem to be explainable upon the ground that the look which he gave for it was merely careless and perfunctory. The entire testimony of the plaintiff clearly indicated that the only standard of duty which he recognized in the matter was that if he could reach the crossing before the car got there, it was the business of the motorman to stop the car until plaintiff got out of the way. If this were all that the plaintiff's testimony disclosed, the case might still be for the jury.

The testimony of the plaintiff as to what he did after looking for the car, when his team was in the position described, presents an entirely distinct question, and removes the case from the realm of doubt. The plaintiff having thus looked for a car, resumed his seat in the buggy,

picked up his blanket from the bottom of the buggy and spread it over his knees, gathered up his reins, and without looking again, or attempting to look, or in any other way endeavoring to find out the position of the car, drove across the track, at a slow walk, and his buggy was struck by the car. These facts the plaintiff affirmatively proved, by his own testimony. The plaintiff knew that there was a car approaching, when he last looked to see where it was; it was necessary, in case he moved on, that he should drive twelve feet to the track, five feet across it, which added to the length of his horse and buggy, sixteen and one-half feet, made a total of thirty-three and one-half feet before he would' reach a place of safety. Notwithstanding these facts, he disregarded his duty to look immediately before entering upon the track, and was injured by the collision with the car. Under the settled rule of our cases he was guilty of contributory negligence and there can be no recovery. When the driver of a team, about to cross the tracks of a passenger railway constructed upon a public highway, fails to look immediately before going upon the track, he is guilty of contributory negligence: Timler v. Philadelphia Rapid Transit Co., 214 Pa. 475; McCracken v. Traction Company, 201 Pa. 378; Bobb v. Union Traction Company, 206 Pa. 265; Smathers v. P. & B. St. Ry. Co., 226 Pa. 212. This rule applies to the crossing of such railway tracks in the country, as well as in the cities: Keenan v. Traction Company, 202 Pa. 107. The reasons for the rule, its nature and necessity, have been so fully considered in the cases cited that further discussion is unnecessary. The learned judge of the court below felt constrained to hold that the rule had been modified, or its application limited, by the decisions in Henderson v. Traction Company, 202 Pa. 527; Mackey v. P. & W. C. Trac. Co., 227 Pa. 482, and Wright v. Pittsburg Rys. Co., 223 Pa. 264; but a careful study of those cases will disclose no intimation of a departure from the well-established rule. In no one of those cases did it appear that the plaintiff had affirmatively proved

that the person driving the team had failed to exercise proper vigilance and continued to look for approaching cars down until he reached and entered upon the track. In Mackey v. P. & W. C. Traction Co., 227 Pa. 482, it was said: "It may be presumed in the absence of any testimony to the contrary that he also continued to look for an approaching car, until his leading horses were entering upon the line of the second track." In the absence of evidence indicating neglect of duty, negligence may not be presumed, but when the negligence of a plaintiff is established out of his own mouth, it is for the court to enforce the rule.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment non obstante veredicto in favor of the defendant.