# Bane, Appellant, *v.* Pittsburgh Railways Company.

*Negligence—Street railways—Collision between car and wagon —Diagonal collision—Failure to look and listen immediately before entering upon tracks—Contributory negligence—Binding instructions.*

1. In an action to recover damages for personal injuries received in a collision between the wagon which plaintiff was driving and a car of the defendant street railway company, binding instructions for the defendant are proper where it appears that just prior to the accident the plaintiff was driving eastwardly along a street longitudinally with the car tracks, and a car of the defendant company was approaching him coming westwardly; that the defendant turned to his left across the track and that in so doing the buggy was struck by the car and he was thrown out and injured; and that there was an unobstructed view of the street upon which the car approached for a distance of approximately 450 feet; and the only evidence offered in behalf of the plaintiff as to the facts of the accident was that which he himself gave, to the effect that about fifty feet before attempting to cross he looked backwards to see whether a car was coming behind him from the west and seeing none immediately looked ahead toward the east and saw no car coming from that direction; that he checked his horse to a walk and turned to cross the car track; that when the horse was already upon the track, with his foot over the first rail, plaintiff looked up and saw the headlight of the car approaching very rapidly and that he urged the horse forward and it had just cleared the track when the car struck the buggy.

2. In such a case where the collision occurred within the instant or two which was required for the horse to step across and clear the track, the collision was for all practical purposes instantaneous and it was apparent that the plaintiff acted in disregard of the simple and effective rule of safety which requires him to look for the car just before entering upon the tracks.

Argued October 31, 1913. Appeal, No. 134, Oct. T., 1913, by plaintiff, from judgment of C. P. Washington Co., Feb. T., 1910, No. 20, for defendant non obstante veredicto in case of Robert M. Bane v. Pittsburgh Rail-

ways Company.    Before FELL, C. J., BROWN, POTTER,
ELKIN and MOSCHZISKER, JJ.    Affirmed.

Trespass to recover damages for personal injuries.
Before MCILVAINE, P. J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict for plaintiff for $8,053.03.
The court subsequently directed that judgment be en-
tered for the defendant n. o. v.

*Error assigned* was in entering judgment for the de-
fendant n. o. v.

*John C. Bane,* with him *Rufus S. Marriner,* for appel-
lant.

*John H. Murdoch,* with him *Edgar B. Murdoch,* for
appellee.

OPINION BY MR. JUSTICE POTTER, January 5, 1914:

The plaintiff in this case sought to recover damages
for personal injuries suffered in a collision with a street
car, due to the alleged negligence of the defendant in
running the car at an undue rate of speed, and in failure
to give notice of its approach.    The defense was con-
tributory negligence by the plaintiff, in that while driv-
ing longitudinally with the track, he turned at an angle
and drove across the track in front of the approaching
car, when it was so close that it could not be stopped in
time to avoid the collision.    The case was tried once
before, and resulted in a verdict for defendant rendered
in pursuance of binding instructions by the court below.
Upon appeal to this court as reported in 238 Pa. 216, the
judgment was reversed upon the ground that the evi-
dence as disclosed by the record did not support a ma-
terial averment of fact, as assumed by the court below.
The second trial resulted in a verdict for plaintiff, but
subsequently the court entered judgment non obstante

veredicto in favor of defendant. Plaintiff has appealed and assigns for error the entry of judgment. In his opinion entering judgment, the learned trial judge refers to the contention of counsel for plaintiff, that the former decision of this court bound him to sustain in any event the verdict of the jury, upon the question of plaintiff's contributory negligence, and prevented the court in the trial then pending, and upon the evidence as it then stood, from passing upon that matter as a question of law. In the view of the trial judge, the opinion of this court was not intended to be so interpreted for, as he said, it was "simply decided that we made a mistake in the first trial by giving binding instructions, and that the plaintiff was entitled to have his case submitted to the jury. But we find no hint in the opinion that at the second trial the question we now decide was not to be an open question, the same as if the case had never been tried before." This interpretation was correct. The judgment upon the former appeal was reversed with an order that the case should be tried de novo, and this judgment is therefore based upon the evidence as it appears upon the record at the last trial. The conclusion of the court below was reached after due consideration of the testimony then offered, and from that evidence, as is demonstrated in the opinion, the trial judge was led to an abiding conviction that the plaintiff's own folly and want of ordinary care, contributed to the injury he suffered, and that it was the duty of the court to so declare. We are, therefore, at this time concerned only with the record as it is now before us, showing the proceedings at the last trial.

It appears that East Beau street in the Borough of Washington runs east and west. From this street, North avenue leads northwardly, but does not cross it. Just prior to the accident the plaintiff was driving eastwardly on East Beau street longitudinally with the car tracks, and a car of the defendant company was approaching him, coming westwardly on that street. The

plaintiff was traveling on the south side of the street railway track, but desired to turn to his left, across the track into North avenue and attempted to do so. His horse barely succeeded in crossing the track, but the buggy was struck by the car and the plaintiff was thrown out and injured. The only evidence offered on behalf of plaintiff as to the facts of the accident was that which he himself gave. He said in substance, that when about fifty feet from North avenue he looked backward to see whether a car was coming behind him from the west. Seeing none he immediately looked ahead toward the east and says he saw no car coming from that direction. He checked his horse to a walk and when nearly opposite North avenue turned to his left in order to cross the car track. When the horse was already upon the track, with his front foot over the first rail, plaintiff as he says "looked up" and saw the headlight of the car approaching very rapidly. He was unable to say how far away it was when he saw it, but it was coming so fast he did not have time to get away from it. He urged the horse forward, and it had just cleared the track when the car struck the buggy. There was an unobstructed view of the street upon which the car approached for a distance of approximately four hundred and fifty feet. According to plaintiff's own statement he looked for the approaching car only twice; first, when he was nearly fifty feet away from the place where he attempted to cross the track and again after his horse was upon the track. He did not say that he continued to look after his first glance, or that he looked for the car immediately before he turned and entered upon the track. His language repeated three times was, that "just as the horse was making the crossing" and "was on the track" he "looked up" and saw the car so close upon him that he could not escape. Obviously, if he had been on the lookout for the car just before reaching the track and before driving upon it, there would have been no necessity for him to "look up" in order to see the car which was then so near

to him.  He would have seen it while he was yet in a place of safety.  On cross-examination the question was put to plaintiff "you hadn't been looking up all the time."  The witness evaded a direct answer saying, "I had looked ahead," evidently referring to his first glance, when as he says he was distant some fifty feet from the crossing.  Thus after stating again, that he had looked at that distance, and had seen no car, he added "I just kept on continuing making my crossing."  He did not say that he continued to look for an approaching car while doing so.  In Moser v. Union Traction Company, 205 Pa. 481, this court said (p. 483) : "It was apparent that the plaintiff acted in disregard of the simple but effective rule of safety, which required him to look for the car just before he entered the track.  The rule has often been declared by this court, and is reiterated in Burke v. Union Traction Company, 198 Pa. 497, as follows: 'The duty to look for an approaching car is an absolute duty, and failure to do so is negligence per se.  This duty is not performed by looking when first entering on the street, but continues until the track is reached: Ehrisman v. East Harrisburg City Passenger Railway Company, 150 Pa. 180; Omslaer v. Pittsburgh, Etc., Traction Company, 168 Pa. 519; Smith v. Electric Traction Company, 187 Pa. 110.'  The opinion emphasizes the fact, that no question arises as to the proper place to look, in the crossing of the tracks of electric roads in cities, but that clearly the duty is to look just before crossing.  The excellence of this rule as a measure of safety is so apparent that it needs no argument in its justification.  No possibility of collision exists until the entry upon the line of the track is made.  The driver of a wagon may stop so close to the track of a street railway, that the nose of his horse may almost touch the passing car, and yet be safe.  But when he undertakes to look for an approaching car while he is yet some distance away from the track, he can be guided by nothing more than conjecture as to the varying rates of speed

with which both car and wagon are approaching a common point. Nothing is more commonly erroneous than the estimate of distance passed over by a continuously moving body in a short space of time." In Timler v. Transit Company, 214 Pa. 475, Mr. Justice Elkin said (p. 477) : "This court has frequently said that when the driver of a team at the intersection of two city streets, fails to look immediately before going upon the track, he is guilty of contributory negligence. (Citing numerous cases.)" In Kannenberg v. Traction Company, 215 Pa. 555, the facts were strikingly like those in the present case. It was there said, Per Curiam: "The plaintiff was riding in a closed laundry wagon going in the direction in which the cars ran, and the only precaution he took before crossing the tracks was to stop and look back when twenty-five or thirty feet from the crossing. He then drove on slowly and without looking again turned across the tracks, and was struck by a car which he could have seen if he had looked again before turning or when at the edge of the tracks. He disregarded a duty established by an unbroken line of decisions on the subject extending from Ehrisman v. East Harrisburg City Pass. Railway Co., 150 Pa. 180, to Moser v. Union Traction Co., 205 Pa. 481."

Under these and numerous other decisions to the same effect which might be cited, it cannot be doubted that the court below was right in entering judgment for defendant upon the ground of his contributory negligence in failing to look for the approaching car immediately before he entered upon the track in front of it. This is true, even taking it for granted that upon the question of defendant's negligence there was sufficient to take the case to the jury. As to that, plaintiff offered no evidence to show the speed at which the car was running. He himself said that "it was coming just as fast as it could." This is very indefinite and it is evident that plaintiff was not at the time in a position to enable him to form a reliable estimate of the speed. He also testified that he

was unable to tell how far the car was away from him when he first saw it. No other witness called by plaintiff saw the car before the accident or testified as to its speed. For defendant, the uncontradicted evidence of the motorman and conductor was that the power was turned off and the brakes were on and that the car was "drifting" down the hill. From the distance the car ran after the collision, and from the fact that the buggy was torn away from the horse it is argued that the car must have been running very fast, but no testimony was offered to show what degree of speed these facts would indicate and the matter was left entirely to conjecture. Plaintiff's case depended entirely upon an assumption that the car was traveling at a rate that would carry it a distance of over four hundred feet, in the time required by plaintiff's horse to walk across the car track and clear it himself, without clearing it with the buggy. To establish such a contention, reasonably clear proof at least should have been offered. The decision of the case, however, must turn upon the fact that the plaintiff did not look for the car immediately before entering upon the track. Had he done so he must have seen the car in dangerous proximity. This is clearly evidenced by the fact that the collision occurred so quickly, that is, within the instant or two which was required for the horse to step across and clear the track. The entry upon the track, and the collision must have been for all practical purposes, instantaneous.

The judgment is affirmed.