# Pilgrim Laundry Company *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Crossing tracks—Wagon and car—Right angle collision.*

In an action against a street railway company to recover damages for injuries to a horse and wagon resulting from a right angle collision between a wagon and car, there is no case for the jury, where the

evidence for the plaintiff shows that the plaintiff's driver driving south on the west side of defendant's track in the evening saw a fully lighted car coming northward about 200 feet distant; that shortly afterward desiring to cross the track to go eastward he again looked and saw the car about 100 feet away moving toward him at an ordinary rate of speed; that between the team and the car about forty feet from the former was a "Stop" sign; that it was customary, although not obligatory for cars to stop at this sign; that as the driver turned, the head of his horse was ten feet distant from the first rail; that the driver did not look again, but permitted his horse to proceed to walk across the track, and that the car struck the wagon between the front and rear wheels.

Argued Oct. 24, 1913. Appeal, No. 101, Oct. T., 1913, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1910, No. 1,156, on verdict for plaintiff in case of Pilgrim Laundry Company v. Philadelphia Rapid Transit Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass to recover damages for injuries to a horse and wagon. Before WILLSON, P. J.

At the trial it appeared that the accident happened on December 4, 1909, between five and six o'clock in the evening, and after dark. The circumstances relating to it are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $134.35. Defendant appealed.

*Errors assigned* were (2) in refusing binding instructions for defendant, and (3) refusing motion for judgment for defendant n. o. v.

*Russell Duane,* for appellant, cited: Carson v. Federal St., etc., Ry. Co., 147 Pa. 219; Timler v. Phila. Rapid Transit Co., 214 Pa. 475; Ehrisman v. Ry. Co., 150 Pa. 180; Burke v. Traction Co., 198 Pa. 497; Keenan v. Traction Co., 202 Pa. 107; Moser v. Traction Co., 205 Pa. 481; Cupps v. Traction Co., 13 Pa. Superior Ct. 630; Brown v. Traction Co., 14 Pa. Superior Ct.

594; McPhillips v. Union Traction Co., 19 Pa. Superior
Ct. 223; Potter v. Ry. Co., 19 Pa. Superior Ct. 444;
Gilmore v. Traction Co., 26 Pa. Superior Ct. 97; Walsh
v. Rapid Transit Co., 27 Pa. Superior Ct. 89; Clift
v. Traction Co., 52 Pa. Superior Ct. 502.

*John W. Best,* for appellee, cited: Callahan v. Traction
Co., 184 Pa. 425; Keenan v. Traction Co., 202 Pa. 107;
Timler v. Transit Co., 214 Pa. 475; Mackey v. Traction
Co., 227 Pa. 482.

OPINION BY PORTER, J., April 20, 1914:

The plaintiff brought this action of trespass to re-
cover for damages to a horse and wagon, which while
being driven by an employee across the track of the
defendant, came into collision with one of the cars of
the defendant company.  The defendant, having upon
the trial submitted a point requesting binding instruc-
tions, which was refused, subsequently moved the court
for judgment non obstante veredicto in favor of the de-
fendant, which motion was overruled, and judgment
entered upon the verdict, appeals and assigns for error
those rulings of the court below.

The plaintiff in support of the action produced testi-
mony tending to establish the following facts: The horse
drawing the wagon was being driven, in the evening
after dark, by an employee of the plaintiff southward
along the west side of Old York road, approaching
Stratford avenue, which entered the Old York road
upon the east side, but did not cross the latter highway.
It was the intention of the driver to turn from the
Old York road, cross the track of the defendant com-
pany, and proceed along Stratford avenue.  As he ap-
proached Stratford avenue he saw a fully lighted trolley
car of the defendant company coming northward upon
the track and about 200 feet distant.  As he turned
from the west side of the road to go eastward he again
looked at the car and saw that it was about 100 feet.

.distant from him and moving toward him at the ordinary rate of speed. Between the team and the car, at a distance of about forty feet from the former was a sign, attached to a trolley pole with the word "Stop." The driver of the wagon testified that this sign had been put there by the defendant company and that it was the general custom for cars to stop at that point. When the driver thus looked at the car, as he turned towards the track the head of his horse was ten feet distant from the first rail; the horse was then moving at a walk, the driver did not again look at the car and without paying further attention to it permitted the horse to proceed to and across the track at a walk, and the car struck the wagon between the front and rear wheels. The testimony of the employees of the defendant company who operated the car, which was corroborated by that of a passenger seemingly disinterested, was to the effect that the horse was suddenly turned directly in front of the car, when the driver was looking in another direction, and that the collision was unavoidable. The nature of the specifications of error renders it necessary to consider only the legal effect of the testimony produced by the plaintiff, assuming such testimony to be true.

There was in this case no evidence that the car was operated at a dangerous rate of speed. No question arises as to the failure of the motorman to give a signal of the approach of the car, as the driver of the wagon saw the car and testified that when he last looked it was moving at the ordinary rate of speed. The head of his horse was then ten feet from the nearest rail and in order to reach a place of safety, if he proceeded, he had to drive that ten feet, then five feet across the track, and to these distances must be added the length of the horse and wagon. He took no further precaution whatever, did not again look at the car and permitted the horse to proceed at a walk until the collision occurred. This case is ruled by Timler v. Philadelphia Rapid Transit Co., 214 Pa. 475; Mr. Justice ELKIN, who spoke

for the Supreme Court in that case said: "When he last looked and saw the car approaching it was necessary, in order to cross in safety, that he should drive nine feet to the track, five feet across it, which added to the length of his horse and wagon, eighteen feet, made a total of thirty-two feet before he could pass the car in safety. Notwithstanding these facts, he disregarded his duty to look immediately before going upon the track, and was injured by the collision with the car. Under the settled rule of our cases he was guilty of contributory negligence, and there can be no recovery." The opinion in that case cites many decisions by which the rule is supported, to which may be added Smathers v. Pittsburg & Butler Street Railway Co., 226 Pa. 212; Underwood v. Pittsburg Railways Co., 238 Pa. 332; Keenan v. Traction Co., 202 Pa. 107, and cases cited in Clift v. Traction Co., 52 Pa. Superior Ct. 502. The driver assumed that the car was going to stop. The plaintiff did not offer in evidence any ordinance or regulation of the city which imposed upon the defendant a legal duty to stop the cars at that point, nor did it produce any rule of the company which imposed upon those operating the cars the duty to stop them at that point, when there were no passengers to be received or discharged by the car. The driver testified, it is true, that it was the general custom for cars to stop at that point, but this did not relieve him from the duty of looking, to see whether the car had stopped, immediately before his horse entered upon the track: Flynn v. Railways Co., 234 Pa. 335; Greenwood v. Railroad Co., 124 Pa. 572. The specifications of error must be sustained.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.