## Ehrisman *v.* East Harrisburg City Passenger Railway Co., Appellant.

[Marked to be reported.]

*Contributory negligence—Street railways—Stop, look and listen.*

It is the duty of a traveler, about to drive across a street railway, to stop, look and listen at the edge of the track, and his neglect to do so is negligence *per se.*

In the case of steam railroads, a question sometimes arises as to the proper place to stop, look and listen. Where there is a fair doubt upon this question, it must be submitted to the jury. No such case arises in the case of city railways.

In this case, plaintiff was guilty of contributory negligence in driving some sixty feet along the track before crossing, after having looked.

*Duties of street car companies and travelers.*

While street railways have not an exclusive right to their tracks, their rights are superior to those of the traveling public. Their cars have the right of way and it is the duty of the citizen, whether on foot or in vehicles, to give unobstructed passage to the cars. On the other hand, it is the duty of the companies to see that their motor-men shall be on the alert, not only at street crossings but everywhere upon the tracks to see that citizens are not run down and injured: Per PAXSON, C. J.

Argued May 30, 1892. Appeal, No. 10, May T., 1892, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1892, No. 312, on verdict for plaintiff, in trespass for personal injuries, caused by the alleged negligence of defendant. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The evidence was to the following effect, on the trial, before SIMONTON, P. J.: On the forenoon of a clear day in August, plaintiff was going down south Second street, Harrisburg, with

his horse and wagon loaded with produce and truck.  The electric street railway of defendant company was located on this street, and at that time extended to Hanna street, about a half mile below Mulberry street.  About 800 feet below Mulberry street, the Reading railroad have an overhead bridge, and about 100 feet below the bridge the street railway makes a short curve to the west into Vine street.  Immediately beyond this curve, crossing said Second street diagonally, are several tracks of the Pennsylvania railroad, over which were passing and repassing, at the time, two engines shifting cars into sidings.  Plaintiff testified that seeing that he could not go on with safety, that he might get caught between the shifting railroad cars and the street car at the curve, he determined to pass over the street car track immediately below the bridge, to the other side of the street, and there tie his horse.  Before passing under the bridge he leaned out of the side of the front part of the wagon and looked up Second street as far as he could, which was as far as Mulberry street, a distance of about 800 feet (the foliage of the overhanging trees preventing a more distant view), and could see no car; none was in sight, nor could he hear any.  Plaintiff testified that as there was but one car running on that branch of the road at that time, he thought the car was beyond the curve, and might come out of Vine street at any moment, and therefore, having looked up, he now looked downward to the curve.  After driving on about 60 feet he turned to cross the tracks obliquely.  When his horse was fairly on the track he heard the gong but kept looking for the car towards Vine street, and before he got over he was struck and injured.  Plaintiff's witnesses estimated that the car was running from 12 to 20 miles per hour.  The evidence was conflicting as to the distance plaintiff went after looking and listening before he tried to cross, whether he could have seen the car when he looked, how far he could see, and the rate of speed and the time within which the car ran any given distance.

The court left the question of contributory negligence to the jury, saying, *inter alia:* "If a man passing along a street railway track, looks up the track and does not see a car, and then drives along the track for such a length of time that in the ordinary course of events, with a car running at an ordinary

rate, it would reach the point where he does undertake to cross, before, or just at the time, he undertakes to cross, he is negligent, he is not acting as a man of ordinary prudence would act. If he looks up the track, however, and sees a certain distance, and does not spend, before he crosses the track, enough time for a car to reach that point, running at as high a rate as he is bound to assume it may be running, then the jury might say he was not negligent; and that is why the question of the rate of speed the car was running enters as one of the elements into this problem—the question of the rate of speed the car was running, the question of the time the plaintiff took after he did look before he undertook to cross; and those are matters that the jury must consider in arriving at a conclusion in this case."

Plaintiff presented the following points, *inter alia :*

" 1. If plaintiff was injured by reason of the reckless and too rapid running of defendant's cars, and plaintiff acted as another ordinary prudent person would under the circumstance, the verdict must be for plaintiff. *Answer :* That is affirmed, gentlemen, with the qualification that is not stated here of another fact that would be necessary to be found, and that was that the injury resulted to him from the too rapid running of the defendant's cars. [1]

" 4. All the circumstances and surroundings must be taken into consideration in determining whether there was contributory negligence. *Answer :* That is correct. [2]

Defendant's points, which were refused, were as follows:

" 1. It clearly appearing by the affirmative testimony of the plaintiff that he drove his wagon on the track of the defendant immediately in front of the moving car, he was guilty of contributory negligence, and cannot recover in this case. [3]

" 2. The plaintiff having testified that he did not look before driving across the railroad track (not a public crossing), was guilty of contributory negligence, and even if he did look when sixty feet away from the place he attempted to cross, would not be relieved from the negligence aforesaid, and the verdict must be for the defendant. [4]

" 3. The plaintiff was well acquainted with the locality and track at that place. He knew there was no public crossing there. Hence, the greater reason that he should exercise the

utmost care and caution by looking and listening before undertaking to cross. His own evidence shows that he did not look for sixty feet before he made the turn, and that the street was free from all obstruction. If he had looked and listened, the accident could not have happened. It was his plain duty to have done this before driving upon the track, and the defendant is entitled to an unqualified instruction that the plaintiff cannot recover in this case. [5]

"4. The failure to stop, look and listen, before crossing a railroad track, is negligence in law. As the plaintiff's evidence shows that he violated this unbending rule the verdict must be for the defendant. [6]

" 5. No circumstances have been proved in this case excusing the negligence by the plaintiff in omitting to obey the requirement of the law. His omission was not merely evidence of negligence, but negligence *per se.* [7]

" 6. The plaintiff having been warned of the approach of the car by the usual signals, and having neglected the warnings, cannot recover. [8]

" 7. Upon the uncontradicted evidence, and the whole evidence in the case, the verdict must be for the defendant." [9]

Verdict for plaintiff for $1,500. A motion for a new trial was overruled, in an opinion, by the court below, saying that the case was a close one. Judgment was entered on the verdict, whereupon defendant appealed.

*Errors assigned* were (1–9) answers to points, quoting them as above.

*L. W. Hall,* with him *Francis Jordan, Charles L. Bailey, Jr., Robert Snodgrass* and *Samuel J. M. McCarrell,* for appellant.—Plaintiff's evidence showed a clear case of contributory negligence. While he testified that he looked at a point 60 feet from the place of the accident, it is plain from the uncontradicted evidence that he could not have looked where he said he did or he would have seen the car. But it was his duty to look immediately before driving on the track, especially so as it was not a crossing. There was no conflict of evidence on this point. There was then nothing for a jury.

Failure to stop immediately before crossing is negligence *per se :* Beale v. R. R., 73 Pa. 504; so is a heedless glance:

Warner v. People's St. Ry., 141 Pa. 615. One must remain until the view is clear: Kraus v. R. R., 139 Pa. 272. Evidence that he stopped, looked and listened will not avail if it also shows that he walked in front of a moving locomotive : Blight v. R. R., 143 Pa. 10 ; Busby v. Phila. Traction Co., 126 Pa. 559 ; Hauser v. R. R., 1 Adv. R. 335.

The reason for the rule applies with force to street cars. It has been so applied in Carson v. St. Ry., 1 Adv. R. 105; Thomas v. Citizens Pass. Ry., 132 Pa. 564. See, also, Ash v. R. R., 1 Adv. R. 475. The rule is important to the traveling public ; it amounts to nothing, is a snare instead of a protection, if not applied in a case like this.

Where the evidence is insufficient to warrant a verdict for plaintiff it is the duty of the court to say so : Patterson, Ry. Ac. L., pages 454–5, citing many cases. See, also, R. R. v. Aiken, 20 Pitts. L. J. 182.

*C. H. Bergner*, with him *Tryon H. Edwards* and *J. C. Durbin*, for appellant.—There is no rule of law which fixes the distance from the place of crossing at which one must stop and look nor a time before crossing when one must listen. If such a rule were made, it would destroy the correctness of the perfect definition of negligence as given in P. W. & B. R. R. v. Stinger, 78 Pa. 225, per PAXSON, C. J.: "Negligence is the absence of care according to circumstances." The court below left it to the jury as to whether, in consideration of the circumstances and surroundings, the plaintiff acted with that degree of care that a prudent man ought to exercise. As it was plaintiff's duty to look and listen, he ought to have done so where he could have done it in an effectual manner. If he had waited until he got under the bridge, a train might have been passing with so much noise that he would not be able to hear the street car, if one was coming, and his horse would have been so uneasy from the noise that he could not have looked out with safety, and he therefore did what a prudent man should do, viz.: look and listen before entering under the bridge. It is evident and mathematically incontrovertible that if defendant had run its car at a rate of even eleven miles an hour, the car would have been 425 feet away when plaintiff was crossing the track. Was plaintiff bound to anticipate

such a reckless rate of speed on a public thoroughfare in a good sized city? This court has said not, in Reeves v. R. R., 30 Pa. 463.

Where there is any doubt of the negligence of the deceased, it is error to direct judgment of nonsuit: McNeal v. Ry., 131 Pa. 184.

Whether or not in a given case plaintiff has stopped to look and listen at the best place is necessarily a question of fact for the jury: Ellis v. Lake Shore Exp. Co., 138 Pa. 506, 515–22.

Opinion by Mr. Chief Justice Paxson, July 13, 1892.

On the 26th of August, 1891, the plaintiff was driving a one horse market-wagon along Second street in the city of Harrisburg. In attempting to cross the defendant company's road upon this street, his wagon was struck by a moving car, causing the injury for which this suit was brought. He was driving down the street in the same direction as the car, and, when about fifty or sixty feet from the track, according to his testimony, he looked out but did not see a car coming. He then drove his horse, to use his own expression, "cati-cornered" across the track, and without looking out again before he crossed it. When seen by the motor-man in charge of the car, his wagon was moving in the same direction, and the accident was evidently caused by pulling his horse directly across the track in front of the car.

The degree of care requisite to be observed in crossing the track of a steam railroad has been the subject of repeated decisions. In Railroad Company v. Beale, 73 Pa. 504, it was held to be the duty of the traveler to stop, look and listen before crossing the track. The rule was declared to be an unbending one, and a failure to observe it is negligence *per se.* The doctrine of this case was much criticised at the time, but is now generally accepted as the law in this country. Subsequent reflection and experience have only strengthened our view of its wisdom. We have no doubt that in many instances it has been the means of saving human life. If strictly observed, accidents at railroad crossings would be as rare as they are now frequent. No rule, however wise, can avert the consequences resulting from negligence.

The large increase of street railways in our cities and large

towns within the last few years, while it has added greatly to the convenience of the citizens, has also added another element of danger. It is therefore necessary to define nearly as may be the relative duties of street car companies, and citizens at street crossings, or other places.

There is this distinction to be observed between steam railroads and street railways. In the case of the former, they have the exclusive right to the use of their tracks at all times and for all purposes, except at road crossings. Street railways have not this exclusive right. Their tracks are used in common by their cars and the traveling public. While this common use is conceded, and is unavoidable in towns and cities, the railway companies and the public have not equal rights. Those of the railway companies are superior. Their cars have the right of way, and it is the duty of the citizen, whether on foot or in vehicles, to give unobstructed passage to the cars. This results from two reasons; first, the fact that the car cannot turn out, or leave its track, and secondly for the convenience and accommodation of the public. These companies have been chartered for the reason in part, at least, that they are a public accommodation. The convenience of an individual, who seeks to cross one of their tracks, must give way to the convenience of the public. It would be unreasonable that a car-load of passengers should be delayed by the unnecessary obstruction of the track by a passing vehicle. On the other hand, it is the duty of the companies to see that their motor-men shall be on the alert, not only at street crossings, but everywhere upon the tracks, to see that citizens are not run down and injured.

The rule to stop, look and listen is applicable in part, at least, to crossing street railways. A person driving a vehicle has but to use his eyes to avoid such accidents. There is no danger, as in the case of steam roads, of stopping a horse at the very edge of the track. When, therefore, a citizen attempts to cross such track, it is his duty when he reaches it to look in both directions for an approaching car. It very rarely, if it ever happens, that the street is so obstructed that the car may not be seen as the citizen approaches the track. It is his duty to look at that point, and if there is any obstruction, to listen, and his neglect to do so is negligence *per se.* This is an unbending rule to be observed at all times, and under all circum-

stances.   In the case of steam roads, a question sometimes arises as to the proper place to stop, look and listen.   Where there is a fair doubt upon this question, we have held that it must be submitted to a jury.   But no such case arises in the case of city railways.   If the citizen looks just before he crosses, he avoids all danger of accident.

Applying these principles to the case in hand, it is manifest the plaintiff was guilty of contributory negligence.   He never looked in the direction of the approaching car at the time he turned the head of his horse across the track.   When he did look he was fifty or sixty feet away with a loaded wagon, and his horse walking slowly.   Moreover he did not cross directly, but in an oblique direction, which would add considerably to the time of crossing.   During that period an electric car would travel a considerable distance.   The conductor may not have anticipated that the plaintiff would attempt to cross the track immediately in front of his car.   Be that as it may, and conceding the negligence of the company, the contributory negligence of the plaintiff was so palpable that the court below should have so declared it as a matter of law, and instructed the jury to find for the defendant.

Judgment reversed.

[See, also, the next case.]