Ruthberg et ux., Appellants, *v.* Philadelphia Rapid
Transit Co. et al.

Argued April 24, 1930.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

*Cecil P. Harvey,* of *Horenstein, Feldman & Harvey,* for appellant.

*S. Regen Ginsburg,* for appellee, was not heard.

OPINION BY MR. JUSTICE FRAZER, May 12, 1930:

These two appeals were argued together and will be disposed of in one opinion, the question involved being the same in both cases.

On May 3, 1927, about 4 o'clock in the afternoon, a trolley car of the Philadelphia Rapid Transit Company, one of defendants, and a heavy motor truck owned by the Bryn Mawr Auto Trucking Company, the other defendant, collided at the intersection of two thoroughfares in a surburban district of the City of Philadelphia. Plaintiffs, husband and wife, the latter, a passenger on the street car, sustained injuries as a result of the collision. They instituted a joint action in trespass against both owners to recover damages. At the close of plaintiffs' case, the trial judge entered a nonsuit as to the Philadelphia Rapid Transit Company and proceded with the trial against the trucking company, the jury returning a verdict for the latter defendant. Plaintiff thereupon moved to take off the nonsuit and also for a new trial. The court in banc sustained the nonsuit, but awarded a new trial as to the trucking company. The appeals here are by plaintiffs from the refusal to take off the nonsuit.

The facts and circumstances as revealed by the record of the case clearly relieve defendant street car company from the charge of negligence on the part of the operator of its car.

The accident occurred in a surburban section not closely built up, and the evidence before us,—that of plaintiff and her one witness,—discloses that no building or other obstruction prevented the driver of the

motor truck from noticing the approaching street car. The truck was traveling at a speed of 25 miles an hour on a roadway that intersected the highway over which the car tracks extended, towards which tracks the motor vehicle was moving. The witness for plaintiff, a passenger in the car at the time of the collision, testified he was looking out of the window and first saw the truck thirty feet from the middle of the intersection of the two streets and that the trolley car was within ten feet of the intersection. We find no evidence to even indicate that at any time before the accident the driver of the truck brought his vehicle to a stop or reduced its speed. He continued to drive forward, and, being close to the tracks, saw the imminence of a collision, and swerved his truck intending to drive parallel with the trolley line, and in doing so, collided with the car, then abreast of him, striking it near the front end. The witness was asked: "Q. The truck kept on going toward the trolley car, did it? A. He first tried to swerve alongside the trolley car, and he saw he could not get across the tracks ahead of the car...... Q. Did he keep on going and bump into the trolley car. ...... A. Yes, sir. He tried to get across in front of the car or to run alongside of it. Then he saw he could not make that, and swerved back again and crashed in the car."

Obviously, the inference from the testimony, not in dispute, is that the truck driver either lost control of his vehicle, or took the chance of crossing the track ahead of the car. In either case, no situation was there created out of which arises a question of negligence on the part of the operator of the street car. The latter had a clear track ahead, his car was in full view of the truck driver, presumably the latter saw it approaching and, at the moment of the collision, the trolley had already reached the intersection, with no danger apparent. The motorman certainly could not anticipate, much less foresee, the hazardous maneuvers of the truck driver. Moreover, the car had the legal right of way. There was no

occasion for the car to stop and no indication of danger. While street car companies have not the exclusive use of the trolley tracks, their rights are superior to those of the traveling public and their cars have the right of way. "No one is warranted in assuming that if he first reaches the crossing he may proceed and that the whole duty of care and vigilance is thus cast on the motorman. The duty to look for an approaching car is an absolute duty, and failure to do so is negligence per se": Burke v. Traction Co., 198 Pa. 497, 499.

There was evidence, entirely negative, that the street car gave no warning sound by its gong. It is also apparent that the truck driver gave no warning of his approaching truck. In either case, these signals, if given, would not materially have changed the situation. The court below found the trolley car was practically over the intersection of the roadways at the time the driver of the truck reversed his direction and came in contact with the car. The rate of speed at which the street car was traveling was twenty miles an hour, the customary speed at that point, and that it was brought to a stop almost instantly following the contact, indicates that the motorman had it under proper control. Moreover, neither the rate of speed nor the failure to sound the gong were, under the facts of this case, incidents of which the collision was a consequence; under the circumstances indicated by the record, a gong alarm would have told the truck driver only what presumably he already knew. We agree with the court below that the evidence fails to establish negligence on the part of the motorman of defendant railway company.

The judgment of the court below refusing to take off the nonsuit entered in favor of the Philadelphia Rapid Transit Company, and the granting of a new trial as to John Tarquinio and Pamfilo Pressedo, trading as Bryn Mawr Auto Trucking Company is affirmed.