Goldfine & Brenner, Inc., *v.* Philadelphia Rapid Transit Company, Appellant.

Argued October 7, 1935. Before
KELLER, P. J., CUNNINGHAM, BALDDRIGE, PARKER,
JAMES and RHODES, JJ.

*Theodore L. Reimel,* with him *Jay B. Leopold* and *Bernard J. O'Connell,* for appellant.

*E. Humes Garber,* with him *Frederick H. Starling,* for appellee.

OPINION BY PARKER, J., November 20, 1935:

A collision occurred in the daytime at a street intersection in the city of Philadelphia between a truck owned by the plaintiff and a street car of the defendant. The plaintiff brought suit to recover the amount

of damages done to its truck by the collision, and the case was tried in municipal court before a judge without a jury when judgment was entered for the plaintiff. The defendant has appealed to this court.

The driver of the truck was proceeding in a westerly direction on Brown Street at the rate of fifteen miles per hour and, when at the house line of Franklin Street, looked to the south and saw the trolley car approaching at a distance of ninety feet. The driver testified that after he left the east house line of Franklin Street he did not see the trolley again until the collision occurred.

"The rules as to the superior right of the street cars to the use of the street and the duty imposed on pedestrians and drivers of vehicles about to cross the tracks have been frequently expressed. It is the imperative duty of the driver to look just before he brings his team [truck] in the path of the moving car and if he fails in this particular and an accident results, his negligence will prevent a recovery": Randall v. Phila. R. T. Co., 62 Pa. Superior Ct. 531, 533. Also, see Timler v. Phila. R. T. Co., 214 Pa. 475, 63 A. 824; Widson v. Phila. R. T. Co., 113 Pa. Superior Ct. 168, 172 A. 164.

The trial court, while recognizing this rule, held that it was not applicable for the reasons that a helper who was on the truck saw the trolley from the time the truck reached the house line until the collision occurred and that if the truck had not stalled on the tracks it would have passed over in safety. It is necessary to refer to the evidence to determine whether the trial court was justified in disregarding the general rule. The following testimony was given by the driver of the truck: "Q. Mr. Braxton, about how fast were you going as you approached Franklin Street? A. About fifteen miles ...... Q. As you continued out into the street will you tell his Honor just what happened to your car? A. I don't know what happened to it but

she lost power. Q. She lost power? A. Yes, sir. Q. Did it go slower? A. Oh, yes. Q. Did it ever stop? A. The motor didn't; the motor ticked along but it didn't have power. Q. Just tell what happened? A. Well, I lost power. Q. Then what? A. I couldn't go across. Q. Then what happened when you lost power? A. It slowed up there, stopped there at the trolley line there. Q. Where was the truck when you say it stopped? A. I was exactly across the trolley line. My front wheels was west of the west track ...... Q. How long were you stopped before the trolley hit you? A. I imagine about two seconds." A helper who was seated in the cab next to the driver stated that he watched the street car from the time the truck passed the curb line until it stopped on the street railway tracks and that the truck had come to a stop "about a couple of seconds" before it was struck. Another helper who was in the back of the truck and did not see the street car approaching stated that the truck stopped "about two seconds" before it was struck.

We are convinced that the facts developed in the case did not warrant a disregard of the rule requiring a driver to look before crossing a street car track. There was not any evidence that the helper had anything to do with the operation or management of the truck or that he communicated to the driver any information as to the approach of the street car. The operator of a vehicle about to cross a street railway track is not only required to look before entering the track, but he must have his car under such control that he can stop it if an emergency arises. Otherwise, the look is of no avail: Smith v. Lehigh Valley T. Co., 296 Pa. 212, 214, 145 A. 818; Miller N. B. S. Co. v. Phila. R. T. Co., 62 Pa. Superior Ct. 568, 570; Augustine v. Phila. R. T. Co., 119 Pa. Superior Ct. 577, 181 A. 378. It appeared from the testimony of the driver, as we have shown, that his engine was losing power and the

truck was limping along as it came to the street car tracks. If he had looked before entering the tracks he would have seen the street car approaching, he would have been in a position to protect his master's property, and it would have been his duty to have stopped and allowed the street car to pass rather than test a known danger. The knowledge of the helper was of no assistance to the driver if not communicated to him, and even then it is doubtful whether the driver of the truck could have taken proper precautions even though he had secondhand information as to the approach of the street car. The facts appearing in this case but emphasize the importance of the rule requiring the driver to look before entering the tracks of a street railway and have his vehicle under control so that he can stop.

Judgment reversed, and it is directed that judgment be entered for the defendant in the court below.