Opinion by
 

 Hirt, J.,
 

 Plaintiff in the late evening of June 20, 1937 was driving south on Sixth Avenue in Pittsburgh intending to cross the bridge into the Liberty Tunnel and thence to his home in Washington County. He was stopped by traffic signals at Forbes Street but on the change
 
 *253
 
 of the lights to green, proceeded into the intersection. He did not see an approaching westbound street car until the front of his automobile was near the first rail of the tracks; he name to a stop but it was then too late to avoid being struck. Plaintiff was permanently injured in the collision. On the trial the jury found in his favor but the verdict was set aside by the court and judgment entered for defendant n. o. v. The entry of this judgment is the one error assigned, raising the single question of plaintiff’s contributory negligence.
 

 The lower court accepted the rule as controlling, that a traveler upon a highway when about to cross a street railway track must use his senses and must continue to look and listen for an approaching street car until he has reached the track
 
 (Moore v. Erie Rys. Co.,
 
 308 Pa. 573, 162 A. 812) and that an
 
 absolute
 
 duty is imposed upon him to look for street cars immediately before going upon the track and the failure to do so is negligence per se.
 
 Goldfine & Brenner, Inc., v„ P. R. T.,
 
 119 Pa. Superior Ct. 581, 181 A. 514. In its application to the admitted fact that plaintiff did not see the street car until it was 50 or 60 feet from him, when it was too late to avoid being struck, he was held to be barred by his failure to perform an absolute duty imposed on him by law. The above is the familiar rule of a long line of cases and there is no doubt as to its general application. A driver need not stop his automobile before entering a crossing or at a point in the intersecting street where he can see the approaching car but he must be vigilant for his safety and, in a situation where the rule is applicable, must look and listen as he nears the track and must have his car under such control that he can stop in time to avoid his injury.
 
 Smathers v. P. & B. St. Ry. Co., 226
 
 Pa. 212, 75 A. 190;
 
 Goldfine & Brenner, Inc., v. P. R. T.,
 
 supra;
 
 Kalter v. Phila. R. T. Co.,
 
 95 Pa. Superior Ct. 116.
 

 The list of cases recognizing and applying these prin
 
 *254
 
 ciples might be further extended. But if the cases be examined it will be found that for the most part they have to do with the drivers of vehicles in the ordinary intersection of two streets, with occasional varying conditions insufficient to affect the “absolute” or “unbending” application of the rule, where the facts are clear.
 

 But this was no ordinary intersection of two lines of travel as the undisputed facts and the plot in evidence will show. The intersection of Sixth Avenue and Forbes Street is within the triangle between the Allegheny and Monongahela Rivers in a most congested section of the City of Pittsburgh near their juncture. Traffic from two boulevards and from many streets, a number of which are main arteries of travel from the east, converge in the neighborhood of the crossing. Sixth Avenue, extended beyond the intersection with Forbes Street, connects with Liberty Bridge which is the sole approach, from the section north of the Monongahela River, to the Liberty Tunnels, a gateway to the densely populated Ohio River valley and to cities and towns in southeastern Pennsylvania. Sixth Avenue also is subjected to much interstate traffic because of its access to the Liberty Tunnels. There probably are few places in the city where motor vehicle traffic is more concentrated than at and in the vicinity of the intersection involved.
 

 The complexity of the traffic problem and the necessity for more than ordinary care on the part of the motorman is indicated by a reference to the map in evidence. In proceeding westwardly on Forbes Street after crossing Boyd Street it is about 150 feet to the intersection of Shingiss Street. The approach to the Liberty Street Bridge is parallel with Shingiss Street and is almost contiguous. To the west of Sixth Avenue along the north side of Forbes Street there is a continuous driveway in front of a gas station and, a short distance further to the west, Forbes Street con
 
 *255
 
 verges with Diamond Street at an acute angle. A motorman in operating his street car, therefore, must be alert to the .movement of traffic into Forbes Street from four other highways within a distance of about 500 feet.
 

 In the light of all the attendant circumstances, we think the question of plaintiff’s negligence was for the jury. There were four traffic lights at or near the crossing, connected in series, directing traffic at the intersection of Forbes Street and Sixth Avenue. If we give the plaintiff the benefit of reasonable inferences from the testimony, the street car ran through .red “stop” lights convicting defendant of gross negligence.
 
 Byrne et al. v. Schultz,
 
 306 Pa. 427, 160 A. 125. From necessity in the solution of the traffic problem presented at this intersection, two things were necessary, namely, multiple lanes of travel for automobiles on Sixth Avenue and its extension to the tunnel, and to keep traffic moving.
 

 There were three southbound vehicular lanes in Sixth Avenue and plaintiff was driving in the westernmost lane next to the curb. In the two lanes to his left there were automobiles approaching the crossing. At Forbes Street they were stopped by red lights but when the signals changed, they all proceeded into the intersection. At that time plaintiff looked to the east and saw no car approaching. As he continued across the intersection his view was obstructed by these automobiles and his first intimation of the approaching street car was when the automobiles in the lanes to his left stopped suddenly. He then applied his brakes but could not stop in time. He had relied upon the invitation of the traffic signals and from necessity, to some extent upon the movement of automobiles to his left and to the judgment ,of those drivers who were in a position to see. But plaintiff inferentially was in the intersection before the street car and he therefore was justified
 
 *256
 
 in assuming that his superior right of way would be respected by a street car approaching the intersection thereafter.
 
 Galliano v. East Penn Electric Co.,
 
 303 Pa. 498, 154 A. 805. In the circumstances the jury undoubtedly found that plaintiff, with traffic signals in his favor, regarded the intersection as a through highway and that he had the right to consider as a factor in his favor the duty of the motorman to obey the law and the probability that he would do so.
 
 Rhinehart v. Jordan,
 
 313 Pa. 197, 169 A. 151. If there was an absolute duty on every driver of an automobile to enter upon defendant’s track in this intersection only after he had seen for himself that there was no street car approaching, the purpose of the traffic -signals near the intersection and the utility of the multiple lanes of travel would be defeated. Conceivably during rush hours every driver in two of the three lanes would have to come to a stop and await an opportunity for an unobstructed view along defendant’s tracks before proceeding, thus causing unnecessary congestion with possible increased hazards of travel.
 

 At the ordinary intersection the duty upon a driver of an automobile is to look for an approaching street car before entering upon the track, with his car under such control that he can stop to avoid injury. This duty is imposed by law and is absolute. In the unusual situation here presented, involving a complex traffic problem, where adequate traffic signals were provided for the direction of travel, we think whether that duty was imposed upon plaintiff was not one of law for the court, but for the jury in applying the test of .reasonable diligence and care under the circumstances.
 

 Judgment reversed and directed to be entered for plaintiff on the verdict.