Leaman Transportation Corporation *v.* Philadelphia Transportation Company, Appellant.

Argued January 9, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Harold Scott Baile,* with him *J. Allen Hodge* and *Bernard J. O'Connell,* for appellant.

*Wm. J. MacCarter, Jr.,* with him *MacCarter & Crawford,* for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1948:

Leaman Transportation Corporation, the plaintiff, sued the Philadelphia Transportation Company for property damage allegedly inflicted through negligence of the defendant. The jury returned a verdict for the plaintiff whereon the court below, after overruling the defendant's motions for judgment n. o. v. and for a new trial, entered judgment. The defendant appeals. The appellant contends that, on the basis of the testimony adduced at trial, the plaintiff is chargeable with contributory negligence as a matter of law and should, therefore, have been denied a recovery. The appellant further contends that the learned trial judge erred reversibly in the charge to the jury for which reason the court en banc should have granted the defendant's motion for a new trial. We shall consider first the question of contributory negligence.

Taking the evidence and all reasonable inferences deducible therefrom, favorable to the verdict, and resolving, to like favorable effect, all doubts arising from the testimony, as consideration of a motion for judgment notwithstanding a verdict procedurally requires, the following is the factual situation basic to the present controversy.

In Tinicum Township, Delaware County, the Industrial Highway, running from Chester to Philadelphia, and the double-track trolley line of the defendant com-

pany's electric railway intersect at grade substantially on the level. In the vicinity of the intersection the highway runs in an east-west direction and consists of two paved strips, each twenty-four feet wide and separated by a two foot divisor, for an over-all width for the highway of fifty feet. The trolley tracks cross the highway in a northeasterly and southwesterly direction, i.e., on a diagonal in relation to the highway, with the acute angle formed by the respective directional lines of the tracks and the highway at the points of intersection approximately thirty degrees. Each track is five feet two and one-half inches wide between its rails with a dummy space between the two tracks of five and one-tenth feet in width. The southbound track lies to the west of the northbound track. The distance along the southbound track from the one side of the highway to the other was variously estimated by witnesses at fifty to one hundred and two feet. Obviously, that distance on the diagonal of the railway across the highway must be more than fifty feet, which, admittedly, is the right-angle width of the highway at the intersection.

About 8:26 P.M. on the night of December 28, 1945, when it was dark and snowing slightly, an employee of the plaintiff company was operating a tractor-trailer oil truck (a thirty-two foot unit), owned by the plaintiff, in an eastwardly direction on the Industrial Highway toward the railway crossing. As the employee drove the tractor-trailer upon the near or southbound track, it was struck (either in the extreme fore part of the trailer or between the tractor and the trailer) by a trolley car of the defendant company which was traveling southwardly at a speed of approximately forty miles per hour according to estimates of witnesses for the plaintiff. The operator of the tractor had made no attemept to stop before driving upon the tracks. Lights on his side of the highway, warning of the railway (to be described later), did not begin to flash or blink until he was at the crossing, as testified in plaintiff's behalf by a witness who,

in his own motor truck, was following, some distance behind the tractor-trailer, toward the railway crossing. However, the trolley car was fully lighted inside and its lights were plainly visible to the same witness. Immediately following the collision, there were two explosions and a fire which completely demolished the tractor and the trolley car, not to speak of the human casualties inflicted, among them being the plaintiff's driver who was killed. As already indicated, the judgment involved in this appeal is for the property damage to the plaintiff's tractor-trailer.

Approaching the intersection from the west, as was the plaintiff's driver, the highway is straight for a distance of approximately four hundred feet with no obstruction to a clear view. At a point to the south of the highway forty-seven feet distant from the west rail of the southbound track and located a few feet from the eight foot highway shoulder, there is a metal upright standard with an arm therefrom at right angles which overhangs the adjacent traffic lane of the highway at a clearance elevation. A signal device attached to the outer end of the arm is designed to warn travelers on the highway of the presence of the railway intersection and of the imminent approach of trolley cars from either direction. The signal consists of an amber light which remains constant and is visible only from the direction of the traveler's approach, i. e., from the west in the case of the signal above described. But, the signal also has two red lights which, when mechanically activated, flash or blink alternately until the trolley car passes completely over the highway. The activation of these signal lights results from an approaching trolley car's engaging an interlocking tripper (to be located hereinafter). The red signal lights are visible from both directions on the highway. Attached to the upright standard are two signs, one reading "4 Tracks" and the other, "Stop on Red Signal". On the opposite or north side of the highway, forty-four feet distant from the east rail of the

northbound track, there is a similar signal device which exists primarily to warn highway traffic approaching the railway crossing from the east, but, as in the case of the other signal, its flashing or blinking red lights are visible from both directions on the highway.

Some twenty-six or twenty-eight feet along the railway to the north of the highway and slightly west of the southbound track there is located a signal light designed to control the motorman in his operation of a trolley car proceeding in a southerly direction toward the highway. Ordinarily, the light shows red, intended to compel a full stop as long as the color so continues. However, when a trolley car passes over an insulated joint or tripper, located some ninety-two and a half feet north of this signal, the light will remain red for eight seconds and then change to amber, denoting to the motorman a "cautious-passage" right to cross the highway. The tripper is interlocked with the mechanisms of the highway warning lights, already described, and the passage of a trolley car over the tripper automatically causes the red lights of the highway signals to begin flashing and blinking at once. The defendant company's tracks were straight for a distance of nine hundred to one thousand feet in their approach to the intersection from the northeast, and there were no obstructions to a view of a trolley car over that entire distance or any part of it by a traveler on the highway approaching the intersection from the west.

The charge of contributory negligence which the appellant alleges must, of necessity, be founded upon the conduct of the plaintiff's driver. The latter having died as a result of the accident without an opportunity to give his version of the cause, a presumption automatically attends that he exercised due care in the circumstances for his own and others' safety: see *Scholl v. Philadelphia Suburban Transportation Company*, 356 Pa. 217, 51 A. 2d 732, and cases there cited. That presumption, however, is a rebuttable one and may be over-

come by countervailing testimony or by proof of the existence of physical facts and circumstances which render the presumption inadmissible and therefore untenable: *Donahue v. Philadelphia Rapid Transit Co.,* 293 Pa. 253, 256, 142 A. 291. It is, of course, only on the basis of evidence by which a plaintiff is irrefutably bound that he can be adjudged guilty of contributory negligence as a matter of law. And, in any event, "The court can declare as a matter of law that a certain state of facts amounts to contributory negligence on the part of a plaintiff . . . only in cases so clear that there is no room for fair and sensible men to differ in their conclusions from the available data"; *Caulton v. Eyre & Co., Inc.,* 330 Pa. 385, 390, 199 A. 136.

The appellant's argument that the driver's failure to stop before entering upon the southbound track constituted a violation of Sec. 1003 of The Vehicle Code, Act of May 1, 1929, P. L. 905, 75 PS § 502, and was therefore negligence *per se* cannot be accepted in the light of the facts here of record. According to a witness for the plaintiff, the highway red warning lights did not begin to flash or blink until the tractor-trailer was at the tracks by which time the signal was behind the driver. While the witness's ability to apportion in the darkness of night the relative distances between objects in a straight line directly ahead of him may well be doubted, unless the testimony for the plaintiff in such regard be entirely ignored (and, that, we may not do on the motion for judgment n. o. v.), an actual violation of the statute by the plaintiff's driver does not appear with the clarity and certainty required for a judicial pronouncement of negligence: see *Caulton* case, supra. In other words, it does not appear with essential certainy that, as to this driver, "a clearly visible and positive signal [gave] warning of the immediate approach of a railway train or car . . .". The mere presence of the established signal did not arbitrarily impose upon the driver an absolute duty to stop. In the absence of any

timely warning by a sign or signal, appropriate to the statute, cit. supra, there is no unqualified duty on the driver of a motor vehicle on a highway to stop at the intersection of an electric railway at grade. The principles of law governing the conduct of travelers at such intersections were well stated for this court by Mr. Justice STERN in *Carden v. Philadelphia Transportation Company*, 351 Pa. 407, 410-411, 41 A. 2d 667, as follows: "It is the duty of the operator of an automobile, immediately before crossing the tracks of a street railway, to look for approaching cars, and, if his view is for any reason obstructed, to listen; it may even, under some circumstances, be required of him to stop, but there is no fixed duty to do so, and, unless the necessity for that additional precaution is obvious, the question whether under the circumstances it should have been taken is for the jury [citing cases]".

But, the fact that a driver of a motor vehicle is not confronted with an obvious signal clearly requiring him to stop does not confer upon him an unqualified or unrestricted right of passage. Thus, in the instant case (without giving any consideration to the operation of the signal lights) the driver's right of passage was merely a qualified permission to proceed carefully and lawfully. He was in no wise relieved of his duty to look: see *Brungo v. Pittsburgh Railways Company*, 132 Pa. Superior Ct. 414, 419, 200 A. 893. "It is an inflexible rule that travelers must look at the edge of the street car track for approaching cars thereon . . . [and] as a companion to the rule above stated, is the additional rule that at the moment of such look the traveler must have his vehicle under control so he can stop before getting in the path of an approaching electric car:" *Smith v. Lehigh Valley Transit Co.*, 296 Pa. 212, 214-215, 145 A. 818. Or, as elsewhere stated in the case just cited (p. 215),—"There is no inflexible rule requiring the traveler to stop before crossing a street railway track;

but there is to stop or have his automobile under such control that he can stop when necessary to avoid danger".

Applying these principles to the instant facts, conclusive upon the plaintiff, it is clear beyond question that, in driving the tractor-trailer upon the tracks of the railway, the plaintiff's employee either failed to look for the approach of the trolley car or, if he looked, he failed to heed the warning so manifestly imparted by the imminence of the admittedly observable oncoming trolley. The undeniable facts of the case support these conclusions. In approaching the crossing, the driver of the tractor-trailer had a clear sight for the distance of the four hundred foot straightaway. He had, moreover, an unobstructed view in the direction of the trolley car's approach for a distance of nine hundred to one thousand feet along the railway beyond the intersection. The trolley car was fully lighted inside and was plainly visible to a driver of a motor vehicle on the highway approaching the crossing from the west. Signs along the highway forecast the presence of the railway crossing and revealed the attendant need for the traveler's exercise of additional care. Yet, almost immediately upon the employee's driving the tractor-trailer onto the railway crossing, the collision ocurred while the cumbersome and heavily laden vehicle (of an over-all weight of twenty-two tons) was not halfway across the southbound track. It follows, therefore, as a matter of law that the driver was guilty of negligence which contributed to the accident that caused the damage sued for by the plaintiff. This is plainly a case where the "person who has entered upon [the] railway track [was] struck so instantaneously as to rebut the presumption that he performed his duty to look and listen, no other inference being possible from the evidence than that he failed to do so:" see *Ehrhart v. York Rys. Co.*, 308 Pa. 566, 570-571, 162 A. 810. On the other hand, if he did actually look, then it at once becomes undeniably apparent, in the light of the surrounding circumstances, that he chose to test an

obvious danger and must therefore be held to have assumed the risk of his lack of proper care: see *Moses v. Northwestern Pennsylvania Railway Company*, 258 Pa. 537, 540, 102 A. 166.

The cases of *Delmer v. Pittsburgh Railways Company*, 348 Pa. 147, 34 A. 2d 502, and *Hoffman v. George*, 155 Pa. Superior Ct. 501, 38 A. 2d 504, which the learned court below deemed presently controlling, are not in point. In each of those cases the question of contributory negligence was held to be a matter for the jury to resolve because the proven circumstances were such as to afford the driver of the motor vehicle a reasonable opportunity to cross safely. Here, the decisive facts refute any idea that such an opportunity was a possibility.

Inasmuch as the question of the plaintiff's contributory negligence must be ruled in the defendant's favor as a matter of law, it becomes unnnecessary to consider the alleged trial errors assigned by the appellant in support of its motion for a new trial.

The judgment appealed from is reversed with directions that judgment n. o. v. be entered for the defendant.