SMITH et al. v. PHILADELPHIA TRANSP.
CO. (FENIMORE, Third-Party De-
fendant).

STERNER v. PHILADELPHIA TRANSP.
CO. (FENIMORE, Third-Party
Defendant).

Nos. 9720, 9721.

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1949.

Decided Feb. 25, 1949.

722

KALODNER, Circuit Judge, dissenting in part.

Harold Scott Baile, of Philadelphia, Pa. (Bernard J. O'Connell and Frederic L. Ballard, both of Philadelphia, Pa., on the brief), for defendant and third-party plaintiff-appellant.

J. H. Ward Hinkson and John V. Diggins, both of Chester, Pa., and Michael A. Foley, of Philadelphia, Pa. (W. Charles Hogg, Jr., of Chester, Pa., on the brief), for Abigail Sterner, plaintiff-appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

These cases arise out of a collision between an automobile and a trolley car. The driver of the automobile was Benjamin D. Fenimore. His five-year old son, Benjamin John Fenimore, Mrs. Florence T. Smith and Mrs. Abigail Sterner were the other occupants of the automobile. As a result of the accident the Fenimore child was killed. All the other occupants of the automobile were injured, and the automobile was demolished. In No. 9721, Mrs. Sterner sues the Philadelphia Transporta-

tion Company (P. T. C.). In No. 9720, all the other occupants of the automobile and its owner, Francis A. Smith, sue the P. T. C. Included also is a wrongful death action brought by Fenimore as administrator of his son's estate, and a claim by the parents for expenses and estimated loss of the child's earnings during his minority. In each case the defendant, P. T. C., joined Fenimore as a third party defendant. In the Court below the jury found that the operator of the trolley car was negligent and that Fenimore, the driver of the automobile, was not negligent. Damages were awarded to all the parties plaintiff, and the defendant, P. T. C., appeals. All the operative facts occurred in Pennsylvania and the federal court has jurisdiction only by diversity of citizenship. Pennsylvania law, of course, controls. Erie Railroad v. Tompkins, 1937, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The material facts are largely undisputed, but where there is any doubt we state those supported by the evidence favorable to the plaintiffs, as we must after a verdict against the defendant. The collision occurred in the early afternoon of July 12, 1946, at a grade crossing on the Industrial Highway between Philadelphia and Chester, Pa. The land in the vicinity of the crossing is open and unsettled. The highway is divided by a grass island, and two lanes of traffic run in each direction. After crossing the east bound lane, the trolley tracks run for 800 feet in the grass island between the dual sections of the road, converging upon and then crossing the westbound lane in which the Smith car was travelling. The highway surfacing at the crossing is the same as that of the rest of the road, and the crossing is level so that the tracks are not conspicuous. On the day in question the road was dry and visibility clear.

The Smith automobile was proceeding toward Chester. It was following a four-ton truck which was in the right hand lane. The Smith car was in the left lane with its front wheels approximately abreast of the rear wheels of the truck. The truck had high solid sides which would prevent the driver of a car on the left from seeing anything to the right of the truck. Fenimore could not, therefor, see the two standard crossing warning signs posted at the right of the highway within 225 feet of the crossing. Fenimore was driving at approximately 35 miles an hour. The evidence shows that the car and the truck proceeded this way for about 1200 feet before reaching the trolley crossing. As they approached the crossing the truck slowed down and Fenimore moved ahead to pass. The truck stopped at the crossing with the passenger car abreast and moving to pass without slowing down. The trolley was coming across from the right at 20 to 25 miles per hour. No warning signals were given, nor was speed reduced prior to collision. Since the tracks cross the highway at an oblique angle, the collision was closer to head-on than to a right angle, and, of course, the impact was a severe one.

The appellant makes three main points. It says, first, that as a matter of Pennsylvania law, the driver of the automobile was negligent, and second, that the trolley motorman was not. If it is unsuccessful in these contentions, the appellant asks, third, for a new trial on grounds of error in the charge to the jury and improper remarks of counsel.

■ Considering first the negligence of the trolley motorman, we think there was clearly sufficient basis in fact for the jury's finding. The motorman was approaching a heavily travelled four-lane dual highway. He must have seen the truck approaching in the right hand lane of the highway. There were two lanes of westbound traffic, and he should clearly have been warned by the solid sides of the truck that there could well be automobile traffic in the left lane which he could not see and which could not see him. There is also some probability that he could have seen the wheels of the Smith car by looking under the truck chassis. However that may be, the fact that he crossed the highway as he did in these circumstances is certainly basis for a jury finding of negligence.

If there is basis for finding P. T. C. negligent, and the jury has found it negligent, that finding takes care of the claims of several of the litigants herein. It requires an affirmance of the judgment on behalf of Mrs. Sterner, a passenger. It

likewise requires affirmance of the judgment for Mrs. Florence T. Smith, another passenger, and for her husband, John M. Smith, who sued for the damages sustained because of the injury to Mrs. Smith. It also requires an affirmance of the judgment for Francis A. Smith, owner of the car, for his property loss. There is no suggestion of negligence on the part of Mrs. Sterner or any of the Smiths, nor is it contended that negligence on the part of Fenimore is attributable to any of them.

The critical and difficult point of the case involves the answer to be given to the defendant's earnest and forceful argument that Fenimore himself must be held guilty of contributory negligence, notwithstanding that the jury has found that he was not guilty. If that jury finding were to be set aside, Fenimore could not recover for his own injuries, nor for the losses caused by the death of his son.[1] Also P. T. C., as third-party plaintiff, would be entitled to a judgment against Fenimore for contribution toward the amounts paid by it to the other plaintiffs.[2]

We proceed then to the question of Fenimore's conduct as he approached the crossing. Defendant makes much of the fact that when the truck, which was travelling in the right hand lane, stopped, Fenimore should have stopped also. The stopping of the truck is supposed to be, according to defendant's argument, some sort of warning to the driver proceeding alongside it. We do not see the force of this argument when we remember that this was a divided highway with two lanes of travel open in the direction in which the vehicles we are talking about were proceeding. The automobile had a perfect right to pass the truck, even at a grade crossing.[3] The truck could have stopped for any one of many reasons which would have had no bearing at all upon Fenimore's exercise of due care in moving ahead. The question at best is one of fact, properly left to the trier of fact.

P. T. C. also makes a vigorous attack upon Fenimore's conduct in other respects. It calls attention to the highway signs which undoubtedly were present at the right of this highway. These signs warned of the crossing, and the Motor Vehicle Code provides that where signs thus appear the motorist shall approach at a speed of twenty miles an hour or less.[4] This and other arguments based upon Fenimore's failure to see the trolley and stop for it all ignore the fact that two lanes of this highway were open to westbound traffic and that the traveller was not restricted to any one. There was nothing negligent about going along, as Fenimore did, to the left of the truck. But the fact that he was at the left of the truck could well have been found by the jury to have kept him from

---

[1] Fenimore asserted two causes of action for the death of the child. As administrator of the child's estate, he asked $25,000 as the economic value of the life of the child after age 21. 20 P.S.Pa. § 772. As administrator and as trustee ad litem for himself and his wife, he claimed $275 for medical and funeral expenses plus $5000 as the present worth of the child's earnings during minority. 12 P.S.Pa. §§ 1601, 1602. A finding of negligence on the part of Fenimore, who was the parent in care and custody of the child at the time, would bar recovery on both claims. Dattola v. Burt Bros., Inc., 1927, 288 Pa. 134, 135 A. 736, 51 A.L.R. 205; Darbrinsky v. Pennsylvania Co., 1915, 248 Pa.503, 94 A. 269, L.R.A.1915E, 781.

[2] The claim for contribution does not affect the judgments in favor of the other plaintiffs against defendant, P. T. C. Full recovery may be had against any one of several joint tort-feasors. Bailey v. C. Lewis Lavine, Inc., 1931, 302 Pa. 273,

153 A. 422. The bringing in of Fenimore as third-party defendant does not make him a defendant as against the other original plaintiffs, but only as against the third-party plaintiff, P. T. C. This preserves federal jurisdiction where plaintiff and third-party defendant are citizens of the same state. See McDonald v. Dykes, D.C.E.D.Pa.1947, 6 F.R.D. 569, affirmed 3 Cir., 1947, 163 F.2d 828; Federal Rules of Civil Procedure, rule 14, 28 U.S.C.A. Under Pennsylvania law, a joint tortfeasor is entitled to contribution from the other negligent parties if he has paid more than his proportionate share of the damages. Trerotola v. Philadelphia, 1943, 346 Pa. 222, 29 A.2d 788; Parker v. Rodgers, 1937, 125 Pa.Super. 48, 189 A. 693. See Restatement, Restitution §§ 81, 86 (1937).

[3] Penna. Motor Vehicle Code, 75 P.S. Pa. § 543(c).

[4] 75 P.S.Pa. § 501(b) 3.

seeing the signs warning of the trolley crossing. And if he was not negligent in failing to see the signs or to know that he was approaching a crossing, we do not think it was negligence per se in that he went faster than the 20 mile speed limit for cars approaching railway crossings. Language of the Pennsylvania court in Kindt v. Reading Co. quoted below is in point. So, too, the language in Comment, c, Section 286, Restatement, Torts.

Many Pennsylvania cases have been cited to establish that trolleys have the right of way at crossings.[5] Those decisions bind us, of course, if they are applicable. Likewise, Pennsylvania decisions have been cited to us to show that darkness and unfamiliarity with the road are no excuse for a driver who does not discover a crossing and is hurt by a collision thereon.[6] Those decisions also bind us if they are applicable.

■ It is clear, however, that the fundamental test for negligence is the failure to exercise reasonable care, not in the abstract, but under the particular circumstances.[7] As lawsuits are brought and decided, rules for particular situations tend to become crystallized; courts hold that under an enumerated set of circumstances a person's conduct is or is not failure to exercise reasonable care. When the rule is thus crystallized, the standard of conduct has been set and is no longer open to finding by a jury. But it must be borne in mind always that the crystallization of general principle into specific rule is one for the special circumstances for which the rule is declared.

In this case we have a situation different, we think, from that involved in the cases cited to us by the defendant. Here there was a divided highway, as already said above, with two lanes equally open to westbound traffic.[8] The only official sign of the approach to the railroad crossing was on the right hand side where it was hidden from Fenimore's view by the truck. Both the truck and Fenimore were where they had a perfect right to be. The crossing was not a conspicuous one in any way. It consisted of four slits crossing this macadam highway in which rails were set. There were no gates or signals or other markers. While it is true that a court or a jury months or years after the accident can see the rails in the excellent photographs submitted for our education, we do not think that they were equally clear to a driver of a car working his way along the highway.

It is perfectly true that there were overhead trolley wires around the neighborhood of this highway. It is also true, as the photographs show, that the highway made a curve to the left near the scene of the accident. All these were matters for the trier of the fact to consider in determining

[5] E. g., Ruthberg v. P. R. T. Co., 1930, 300 Pa. 536, 151 A. 19; Dopler v. Pittsburgh Ry. Co., 1931, 307 Pa. 113, 160 A. 592; Ehrisman v. East Harrisburg City Passenger Ry. Co., 1892, 150 Pa. 180, 24 A. 596, 17 L.R.A. 448. Cf. Rea v. Pittsburgh Rys. Co., 1941, 146 Pa.Super. 252, 22 A.2d 68.

[6] Leaman Transportation Corp. v. P. T. C., 1948, 358 Pa. 625, 57 A.2d 889; Anspach v. Philadelphia & Reading Ry. Co., 1909, 225 Pa. 528, 74 A. 373, 23 L.R.A., N.S., 382; Cf. Kindt v. Reading Co., 1945, 352 Pa. 419, 43 A.2d 145, 162 A. L.R. 1.

[7] Restatement, Torts § 282 et seq. (1934); Prosser, Torts § 30 et seq. (1941).

[8] A Pennsylvania decision giving weight to the existence of multiple traffic lanes in evaluating the conduct of a motorist who collided with a trolley car is Rea v. Pittsburgh Rys. Co., 1941, 146 Pa.Super. 252, 256, 22 A.2d 68, 70. The court there said:

"If there was an absolute duty on every driver of an automobile to enter upon defendant's track in this intersection only after he had seen for himself that there was no street car approaching, the purpose of the traffic signals near the intersection and the utility of the multiple lanes of travel would be defeated. Conceivably during rush hours every driver in two of the three lanes have to come to a stop and await an opportunity for an unobstructed view along defendant's tracks before proceeding, thus causing unnecessary congestion with possible increased hazards of travel.

"* * * we think whether that duty was imposed upon plaintiff was not one of law for the court, but for the jury in applying the test of reasonable diligence and care under the circumstances."

Fenimore's conduct. Certainly the finding that he was negligent would have been impregnable against attack. It is not so easy to support a finding that he was not negligent. But we think the cases and the situations put to us in the very able argument for the defendant are distinguishable and that this case was one in which a jury could have found either way without having the finding characterized as outrageous or unreasonable. In this we are supported particularly by the decision in Kindt v. Reading Co., 1945, 352 Pa. 419, 423, 43 A. 2d 145, 147, 162 A.L.R. 1, in which the Pennsylvania Supreme Court said: "If the driver of a car knows or has reason to believe that he is approaching a railroad crossing or a through thoroughfare he must, of course, 'stop, look and listen.' If he reasonably believes he is on a quiet country road far away from all traffic, he does not have to 'consciously listen' for warning signals. In the instant case the evidence satisfied both the court and the jury that these plaintiffs did not know or have adequate reason to know that they were about to cross a railroad. The degree of attentiveness to which the law holds them must be determined by that fact. If they were not chargeable with the knowledge of the presence of a railroad crossing, the duty to 'stop, look and listen' at that point was not cast upon them." We shall, therefore, let the verdict stand.

The defendant's argument also presents several points which it is claimed are grounds for a new trial even if the jury's findings with regard to negligence of the parties is to be sustained. We are not impressed with them, but because they have been earnestly urged upon us we think each is entitled to an answer.

■ 1. Arguments of counsel. Counsel for the plaintiff touched on two points which are objected to. One was an appeal to the jury not to find Fenimore negligent because to do so would be to compel him to carry the burden through life of having been responsible for his own boy's death. The other was a suggestion by counsel to the jury that the court could re-duce the verdict but could not increase it. In each instance the trial court, having its attention drawn to the statements through objection by the defendant's counsel, instructed the jury to disregard the argument.

We do not find either statement inflammatory. We think the instructions of the trial court cured any harm they might have done. Juries are not so likely to get excited or inflamed by lawyers' talk as lawyers think they are.

2. Certain law points with regard to which defendant said the jury should have been instructed, in particular the one concerning speed of vehicles approaching crossings, we have already covered in the discussion above. They do not need to be elaborated again here.

■ 3. Defendant complains that the jury was told what the various plaintiffs had claimed in their complaints. It cites this as error and gives us several Pennsylvania decisions to support it. It also cites Vaughan v. Magee, 3 Cir., 1914, 218 F. 630, a decision from this Court. It is to be noted that at that date we were taking our procedural law from the state courts under the Conformity Act and applying our own notions of substantive law in diversity cases. We do not think that our earlier decision is applicable and defendant's counsel, himself, agreed that the Pennsylvania decisions did not control this point. Comments upon the Pennsylvania rule on our part would be gratuitous. The argument, at worst, was nothing more than irrelevant and the Trial Judge cured any error by his instructions to the jury to disregard the point.

■ 4. The last point has to do with the verdict in favor of the parents for the death of the child. Two claims are involved. The first is a survival action by the administrator of the child's estate.[9] In that claim the basis of recovery in Pennsylvania is the economic value of the life of the child as measured by the probable net earnings during his life expectancy after age 21, reduced to present value.[10] The

---

[9] 20 P.S.Pa. § 772.

[10] Murray v. Philadelphia Transportation Co., 1948, 359 Pa. 69, 58 A.2d 323, noted in 96 U. of Pa.L.Rev. 893 (1948); Pezzulli v. D'Ambrosia, 1942, 344 Pa. 643, 26 A.2d 659.

second is a wrongful death claim,[11] in which recovery is limited to financial loss sustained by the parents.[12]

In answer to the specific interrogatories, the jury awarded damages of $500 to the administrator in what was necessarily the claim based on the survival statute, and $10,000 in the claim based on the wrongful death statute.[13] The error is obvious, for the amount claimed for wrongful death was only $275 for medical and funeral expenses plus $5000 for estimated loss of earnings of the child to age 21. The financial position of the Fenimores and the testimony showing that the boy would have attended college indicate clearly that the claim for loss of earnings during his minority was a weak one.

In this situation, we think that the jury reversed its answers to interrogatories 6 and 7. The mistake is easily remedied by setting the answers opposite the proper questions. This is, of course, a procedural matter in which we are free to follow our own rule, but we note that the Pennsylvania Supreme Court has done exactly the same thing in a recent case.[14] The error is harmless and the total effect is the same.

The judgments will be affirmed.

KALODNER, Circuit Judge (concurring in part, dissenting in part).

I agree with the view of the majority that there is basis for the jury's finding that the P. T. C. was negligent and that accordingly the judgments for Mrs. Abigail Sterner, Mrs. Florence T. Smith, John M. Smith and Francis A. Smith should be affirmed. In my opinion, however, the testimony clearly establishes that Fenimore was guilty of contributory negligence as a matter of law under the Pennsylvania decisions and accordingly the judgments entered in his favor, individually and in the two claims arising out of his minor son's death, should be set aside.

Since Fenimore was negligent, the P. T. C. as third-party plaintiff is entitled to a judgment against him for contribution toward the judgments obtained against it by the other plaintiffs above named. Fenimore's own testimony and that of his witness clearly establish his contributory negligence.

Viewing that testimony in its most favorable light, as we are required to do, it establishes (1) the presence of trolley tracks adjacent to the left of the highway for almost half a mile before the crossing; (2) the overhead trolley wire crossed the highway at the point of the collision; (3) the highway turned to Fenimore's left at the point where it crossed the tracks; (4) Fenimore passed to the left of the stopped truck and travelled approximately 45 feet beyond it before the collision took place; (5) Fenimore cleared the westbound tracks and the five foot dummy area between those tracks and the eastbound tracks, on which the trolley was proceeding, when the collision occurred; (6) the collision occurred after the trolley passed the center of the 24-foot highway on which Fenimore was travelling; (7) Fenimore *first saw the trolley* when "it was on top of me" (N.T. pages 83, 84); (8) his sighting of the trolley and the collision occurred simultaneously; (9) the trolley and Fenimore's automobile crashed "head-on".

Factors (1), (2) and (3) should have put Fenimore on notice of the existence of the trolley crossing. By his action, described in (4), his testimony that he did not see the two trolley crossing warning signs becomes immaterial for in my opinion, Leaman Transportation Corp. v. P. T. C., 1948, 358 Pa. 625, 57 A.2d 889, clearly controls. In that case, which incidentally also involved the Industrial Highway, the plaintiff's truck was struck by the trolley almost immediately after it entered onto the tracks; the truck was not halfway across the tracks when it was struck. The Penn-

---

[11] 12 P.S.Pa. § 1601.

[12] Wilson v. Consolidated Dressed Beef Co., 1929, 295 Pa. 168, 145 A. 81.

[13] "6. What damages were sustained by Benjamin D. Fenimore as Administrator of the Estate of Benjamin John Fenimore, Deceased? $500.

"7. What damages were sustained by Benjamin D. Fenimore and Elizabeth S. Fenimore as parents of Benjamin John Fenimore, Deceased? $10,000."

[14] Siidekum v. Animal Rescue League, 1946, 353 Pa. 408, 45 A.2d 59. See Federal Rules of Civil Procedure, rules 60, 61, 28 U.S.C.A.

sylvania Supreme Court held that the truck driver was guilty of contributory negligence as a matter of law, stating, 358 Pa. at page 632, 57 A.2d at page 893:

"\* \* \* It follows, therefore, as a matter of law that the driver was guilty of negligence which contributed to the accident that caused the damage sued for by the plaintiff. This is plainly a case where the 'person who has entered upon (the) railway track (was) struck so instantaneously as to rebut the presumption that he performed his duty to look and listen; no other inference being honestly possible from the evidence than that he failed to do so.' See Ehrhart v. York R. Co., 308 Pa. 566, 570, 571, 162 A. 810, 811. On the other hand, if he did actually look, then it at once becomes undeniably apparent, in the light of the surrounding circumstances, that he chose to test an obvious danger and must therefore be held to have assumed the risk of his lack of proper care. See Moses v. Northwestern Pennsylvania R. Company, 258 Pa. 537, 540, 102 A. 166."

It may be noted that the ruling of contributory negligence in the Leaman case was made despite the fact that the truck driver, having been killed, was presumed under the Pennsylvania law, to have exercised due care. In the case *sub judice* the vehicle driven by Fenimore was struck at the instant it reached the east-bound trolley tracks, making out a much stronger case for contributory negligence than in the Leaman case.