Kolesar *v.* Pittsburgh Railways Co., Appellant.

Argued April 18, 1958. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

Before Duff, J.

*Leo Daniels,* with him *John Ward Hindman,* and *Prichard, Lawler & Geltz,* for appellant.

*Lee L. Leonard,* for appellee.

Opinion by Ervin, J., June 11, 1958:

This is an action in trespass arising out of a right angle collision between an automobile and a trolley car, in which the defendant has appealed from the refusal of the court below to enter judgment n.o.v., after a verdict in favor of the plaintiff.

On May 8, 1954, about 2:00 a.m., the plaintiff was operating his automobile in a southerly direction on Market Street at its intersection with Diamond Street in the city of Pittsburgh. Market Street is a one way street in a southerly direction and Diamond Street is a one way street in a westerly direction. Diamond Street is 30 feet wide between curbs, with a single trolley track located in the center thereof. Market Street is 24 feet wide between curbs. There were no traffic signals or signs controlling the intersection.

Considering the facts most favorably to the plaintiff, as we must, we are of the opinion that he was guilty of contributory negligence as a matter of law. He testified that when his front wheels were up to or a little past the northerly curbline of Diamond Street, he looked to his left and observed the defendant's trolley car on Diamond Street. He estimated that distance to be 80 to 90 feet away when in reality the distance from the easterly curbline of Market Street to the easterly curbline of McMaster's Way, according to the

plan offered in evidence by the defendant, is approximately 150 feet. The plaintiff further testified that he estimated the speed of the trolley car to be 20 or 30 miles per hour and it appeared to slow down for McMaster's Way, where a trolley stop was located. Plaintiff said that his own speed was 3 or 4 miles per hour when he made his aforesaid observation. Plaintiff looked to his right, then forward, and proceeded to cross Diamond Street. He then testified as follows: ". . . and as I got to about the center, I looked around, and here is—he was practically on top of me when I got to the center of the car tracks." In cross-examination he testified: "Q. Now, after you saw this streetcar the first time when it was seventy or eighty feet away, am I correct that the next time you saw it, it was almost on top of you? A. Yes, sir. Q. And by almost on top of you can you tell the jury and me how far away from you that would be in feet? A. I would say about three or four feet. Q. About three or four feet? A. Yes, sir. Q. To the left of your automobile? A. Yes, sir. Q. And I believe you said at this time your automobile was struck in the center of its left hand side? A. Yes. Q. As a matter of fact, your left front of the car was also damaged, wasn't it? A. The left side of the door. Q. What about the left front fender? A. No. Q. How about the left front grille? A. No. Q. Your car wasn't— A. I was right in the center of the tracks. Q. You were not in motion when the accident happened? Q. Did you do anything at all to attempt to avoid the accident? A. I could not have done anything about it. Q. You didn't though, did you? A. I could not. If you seen something big like that hitting you, what could you do? Q. That's right, and after you saw it the first time, the next time you saw it, it was three or four feet from being on top of you, is that right? A. (No reply). Q. Now, you had been going

298

right down the middle of Market Street, you testified? A. Yes, sir. Q. And were you in the middle of Market Street when the streetcar had struck you? A. What do you mean 'in the middle'? Q. Was your car still in the middle of Market Street when the streetcar struck you? A. After it struck me? Q. No, when it struck you? A. Yes."

It is an inflexible rule that travelers must look at the edge of the street car track for approaching cars thereon and as a companion to the rule above stated, there is the additional rule that at the moment of such look the traveler must have his vehicle under control so that he can stop before getting in the path of an approaching electric car: *Leaman Transportation Corp. v. Phila. Transportation Co.*, 358 Pa. 625, 631, 57 A. 2d 889; *O'Connor v. Phila. Suburban Transportation Co.*, 362 Pa. 404, 407, 66 A. 2d 818.

It is crystal clear that the plaintiff failed to look a second time at the edge of the track before entering thereon.

Appellee cites a number of cases to demonstrate that he was not contributorily negligent. In every one of the cases cited, the plaintiff looked a second time at the edge of the street car track.

Certainly, if the appellee had looked just prior to entering the track, he would have seen the trolley car approaching and could have avoided the accident, because he testified that he could have stopped in 3 or 4 feet.

Judgment reversed and the record is remanded to the court below for the entry of judgment n.o.v. in favor of the appellant.

WOODSIDE and WATKINS, JJ., dissent.